[No. S157793. June 22, 2009.]

JAVIER R. GUZMAN et al., Plaintiffs and Appellants, v.
COUNTY OF MONTEREY et al., Defendants and Respondents.

892

COUNSEL

Sullivan Hill Lewin Rez & Engel, Brian L. Burchett; Law Offices of Richard H. Rosenthal, Richard H. Rosenthal; Selden Law Firm and Lynde Selden II for Plaintiffs and Appellants.

Charles J. McKee, County Counsel, and Patrick McGreal, Deputy County Counsel, for Defendants and Respondents.

Dennis J. Herrera, City Attorney (San Francisco), Joanne Hoeper, Chief Trial Deputy, John S. Roddy and Donald P. Margolis, Deputy City Attorneys, for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Defendants and Respondents.

Edmund G. Brown, Jr., Attorney General, David S. Chaney, Chief Assistant Attorney General, Gordon B. Burns, Deputy State Solicitor General, James M. Schiavenza, Assistant Attorney General, and Kristin G. Hogue, Deputy Attorney General, for California Health and Human Services Agency, California Department of Public Health, California Department of Aging, California Department of Alcohol and Drug Programs, California Department of Child Support Services, California Department of Community Services and Development, California Department of Developmental Services, California Emergency Medical Services Authority, California Department of Health Care Services, California Managed Risk Medical Insurance Board, California Department of Mental Health, California Department of Rehabilitation, California Department of Social Services and California Office of Statewide Health Planning and Development as Amici Curiae on behalf of Defendants and Respondents.

## Opinion

**CHIN, J.**—This case involves the state's Safe Drinking Water Act (Health & Saf. Code, § 116270 et seq.) and its implementing regulations. Plaintiffs are approximately 80 men, women, and children who resided at the Jensen Camp Mobile Home Park (Jensen Camp) in Monterey County (County) between 1995 and 2003. Plaintiffs claim that since at least 1995, the drinking water at Jensen Camp was contaminated with high levels of naturally occurring fluoride, but that residents were not told of the contamination until 2003. They brought an action against Rick Pinch, Jensen Camp's owner and the operator of its water system, and against the County and the County's department of health, which were responsible for overseeing the public water systems in their jurisdiction.[1]

Plaintiffs alleged that the County negligently failed to perform certain duties under the Safe Drinking Water Act and regulations, the performance of which they claim would have prevented them from drinking the contaminated

---

[1] The County and its department of health were not treated as separate entities below. Like the Court of Appeal below, we refer to the entities collectively as the County.

water. Among other things, plaintiffs maintained that the County had the duty to review and to respond to the water system's monitoring reports, which necessarily implied that the County would direct Pinch to notify the residents of any reported water contamination. The Court of Appeal here held that the County had an implied mandatory duty to direct Pinch to give such notification to residents, which mandatory duty subjected the public entity to liability under Government Code section 815.6.

For reasons that follow, we disagree. Although the County oversees the water systems within its jurisdiction, it does not have the primary responsibility to notify consumers of any contaminated water. This duty rests squarely with the operator of the water system (hereafter, water system or water system operator). As discussed in greater detail below, in order to impose a mandatory duty on a public entity (see Gov. Code, § 815.6), " 'the mandatory nature of the duty must be phrased in explicit and forceful language' " (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 689 [64 Cal.Rptr.3d 827] (*Groundwater Cases*)), and the statute "must impose a duty on the specific public entity sought to be held liable" (*Forbes v. County of San Bernardino* (2002) 101 Cal.App.4th 48, 54 [123 Cal.Rptr.2d 721] (*Forbes*)).

We reverse the Court of Appeal's judgment, which reversed the trial court's order sustaining the County's demurrer without leave to amend and the resulting judgment of dismissal. However, as we shall further explain, the Court of Appeal on remand should determine whether plaintiffs have alleged any express mandatory duties that would, in and of themselves, give rise to an action against the County under Government Code section 815.6.

### FACTUAL AND PROCEDURAL BACKGROUND

We rely largely on the Court of Appeal's statement of facts. (Cal. Rules of Court, rule 8.500(c)(2).) As that court explained, " 'On appeal from dismissal following a sustained demurrer, we take as true all well-pleaded factual allegations of the complaint.' (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 495 [93 Cal.Rptr.2d 327, 993 P.2d 983] (*Haggis*).)" Plaintiffs' third amended complaint alleged the following facts.

From November 1995 through August 2003, defendant Pinch owned Jensen Camp, which contained approximately 25 spaces for mobilehomes. He also operated the public water system that provided drinking water to Jensen Camp's residents. As discussed in greater detail below, plaintiffs allege that the County was responsible for ensuring that public water systems in its

jurisdiction, like the one at Jensen Camp, were operated in compliance with the law. Plaintiffs maintain that Pinch, who was not knowledgeable as a water system operator, relied on the County for information and direction in managing the Jensen Camp water system.

Under the Safe Drinking Water Act and its implementing regulations, Pinch was required to monitor the water quality at Jensen Camp and to notify the County and the water consumers whenever certain inorganic chemicals in the water, like fluoride, exceeded a specified maximum contaminant level (MCL). (Health & Saf. Code, § 116275, subd. (f) [defining MCL].) The MCL for fluoride is 2.0 milligrams per liter (mg/L). (Cal. Code Regs., tit. 22, ch. 15, § 64431.) Water containing fluoride in excess of the MCL poses a risk of injury to persons drinking it.

Pinch periodically monitored the water quality at Jensen Camp. The monitoring reports indicated that in 1995, the level of fluoride in the water was 7.6 mg/L; in 1999, it was 8.5 mg/L; and in 2002, it was 5.8 mg/L. Therefore, each of the water monitoring reports showed that the water at Jensen Camp greatly exceeded the allowable MCL for fluoride. The County received copies of these monitoring reports. However, prior to 2003, it did not review the reports and did not direct Pinch to notify plaintiffs that their drinking water was unsafe. In April 2003, the County imposed a compliance order under which Pinch acknowledged the fluoride contamination and agreed to make necessary repairs to the water system.

In or about August 2003, plaintiffs Javier R. Guzman and Tosha F. Djirbandee-Ramos, who were residents of Jensen Camp at the time, purchased the camp from Pinch. They did not become aware of the fluoride contamination until after the sale. Once the new owners learned of the contamination, they notified the other residents and provided bottled water while they investigated repairs to the water system.

Plaintiffs filed the instant lawsuit against Pinch and the County. In their third amended complaint (the relevant pleading here), plaintiffs alleged two negligence causes of action against the County.[2] Claiming that the County had breached a mandatory duty under Government Code section 815.6, plaintiffs cited the following statutes in support of this negligence claim:

---

[2] One of plaintiffs' negligence claims against the County, which alleges a "special relationship" between plaintiffs and the County, is not at issue in this appeal. Plaintiffs' claims against Pinch are pending in the superior court, and are also not at issue here.

Health and Safety Code section 116325, and sections 64256, 64257, 64432, 64480, and former section 64464.3 of title 22 of the California Code of Regulations.[3]

As discussed in greater detail below, plaintiffs' third cause of action against the County alleged that under these "enactments" (Gov. Code, § 815.6), the County had a mandatory duty to (1) review Pinch's water quality monitoring reports and establish a system to assure that data submitted by water suppliers be reviewed for compliance (§ 64256, subd. (e)); (2) notify Pinch of his monitoring requirements under section 64432 (§ 64256, subd. (a)); (3) report water quality violations to the State Department of Health Services[4] (§ 64257); (4) review "consumer confidence reports" and ensure that Pinch delivered such reports to the Jensen Camp residents (§ 64480); and (5) ensure that Pinch complied with the Safe Drinking Water Act and that he notified Jensen Camp residents of the contaminated water (Health & Saf. Code, § 116325; former § 64464.3). The trial court sustained, without leave to amend, the County's demurrer to the third cause of action, and subsequently dismissed the County from the action. Plaintiffs appealed.

Agreeing with plaintiffs in part,[5] the Court of Appeal held that the County, as the local primacy agency, had the implied mandatory duty to instruct the water system operator to notify consumers of any water contamination. To reach this holding, the Court of Appeal concluded the County had mandatory duties to notify the water system of its monitoring and reporting require-ments, to review monitoring reports monthly, and to report compliance violations to the Department. (§ 64256, subds. (a), (e); § 64257, subd. (a).) While recognizing that Pinch, as the water system operator, had the direct duty to notify consumers of any water contamination (see former § 64464.3, subd. (a)(1)), the Court of Appeal concluded that "[t]he system described in former section[s] 64464.1 and 64464.3[6] unquestionably presumed that the local primacy agency would respond to reports of contamination and direct

---

[3] Unless otherwise noted, all further section references are to title 22 of the California Code of Regulations.

[4] As of July 1, 2007, the "duties, powers, functions, jurisdiction, and responsibilities" of the former State Department of Health Services were transferred to the State Department of Public Health. (Health & Saf. Code, § 131051, subd. (a)(5); see *id.*, § 116270, subd. (g).) We shall refer to the responsible state entity as the "Department."

[5] Plaintiffs do not challenge the Court of Appeal's holding that Health and Safety Code section 116325, and sections 64480, 64432, and former section 64464.3 (at least not explicitly) do not impose any particular mandatory duty on the County because "[n]one of these enactments is directed to the primacy agency . . . ." Nor do plaintiffs challenge the Court of Appeal's conclusion that section 64256, subdivision (e) in part does not impose a mandatory duty because it does not specify the type of system a local primacy agency must establish. As such, we do not discuss them here.

[6] Former sections 64464.1 and 64464.3, which were adopted in 1992 but repealed in 2006, were operative at all times relevant here. (See Register 92, No. 22 (May 27, 1992).) The

the water system to notify the persons served and to specify the manner in which notification was to be given." It stopped short of holding that the County "had a mandatory duty to ensure that the notice was given or that it was given in any particular manner." In addition, the Court of Appeal concluded that these mandatory duties were intended to protect against the physical and emotional injuries plaintiffs claimed to have suffered, and that plaintiffs sufficiently pled a causal link between the mandatory duty and the injury alleged to withstand the demurrer. Finally, the Court of Appeal rejected the County's claim that it was immune from liability under Government Code sections 818.2, 818.4, 820.4, 820.8, 821, and 821.2.

We granted review.

**DISCUSSION**

A. *Government Code section 815.6*

■ Under the Government Claims Act (Gov. Code, § 810 et seq.), there is no common law tort liability for public entities in California; instead, such liability must be based on statute. (Gov. Code, § 815, subd. (a) ["Except as otherwise provided by statute: [¶] . . . A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity . . . ."]; *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 899 [80 Cal.Rptr.3d 690, 188 P.3d 629]; see *Williams v. Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125] ["intent of the act is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances"].) One such statute is Government Code section 815.6, which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (See *Haggis v. City of Los Angeles, supra*, 22 Cal.4th at p. 498 (*Haggis*).) ■ A private cause of action lies against a public entity only if the underlying enactment sets forth the elements of liability set out in section 815.6. (*Haggis, supra*, 22 Cal.4th at pp. 499–500; see Gov. Code, § 810.6 [" '[e]nactment' " defined as "constitutional provision, statute, charter provision, ordinance or regulation"].)

---

current notification regulations are set out in article 18 of title 22 of the California Code of Regulations, titled "Notification of Water Consumers and the Department." (See, e.g., §§ 64463 ["General Public Notification Requirements"], 64463.1 ["Tier 1 Public Notice"], 64463.4 ["Tier 2 Public Notice"], 64463.7 ["Tier 3 Public Notice"], 64465 ["Public Notice Content and Format"].)

■ The elements of liability under Government Code section 815.6 are as follows: "First and foremost, application of section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. [Citation.] It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion. [Citation.]" (*Haggis, supra*, 22 Cal.4th at p. 498.) Courts have construed this first prong rather strictly, finding a mandatory duty only if the enactment "affirmatively imposes the duty and provides implementing guidelines." (*O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 510 [44 Cal.Rptr.3d 531] (*O'Toole*); see *Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1240 [271 Cal.Rptr. 72] (*Clausing*) ["If rules and guidelines for the implementation of an alleged mandatory duty are not set forth in an otherwise prohibitory statute, it cannot create a mandatory duty."].)

■ "Second, but equally important, section 815.6 requires that the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is ' "one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." ' [Citation.] Our inquiry in this regard goes to the legislative *purpose* of imposing the duty. That the enactment 'confers some benefit' on the class to which plaintiff belongs is not enough; if the benefit is 'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6. [Citation.]" (*Haggis, supra*, 22 Cal.4th at p. 499; see also Evid. Code, § 669, subd. (a)(1) [rebuttable presumption of negligence based on violation of statute, ordinance or regulation of public entity].) If these two prongs are met, the next question is whether the breach of the duty was a proximate cause of the plaintiff's injury. (See *Groundwater Cases, supra*, 154 Cal.App.4th at p. 689; *Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1458 [81 Cal.Rptr.2d 165].)

"Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts." (*Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 631 [76 Cal.Rptr.2d 489, 957 P.2d 1323] (*Creason*); see *Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1234–1235 [130 Cal.Rptr.2d 209] [same rules of statutory construction govern interpretation of regulations by administrative agencies].) We examine the "language, function and apparent purpose" of each cited enactment "to determine if any or each creates a mandatory duty designed to protect against" the injury allegedly suffered by plaintiff. (*Haggis, supra*, 22 Cal.4th at p. 500.) At the outset, we recognize that the term "shall" is defined as "mandatory" for purposes of the Health and Safety Code. (Health & Saf.

Code, § 16; see also Gov. Code, § 14.) However, as we have emphasized, this term's inclusion in an enactment does not necessarily create a mandatory duty; there may be "other factors [that] indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion." (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 910, fn. 6 [136 Cal.Rptr. 251, 559 P.2d 606] (*Morris*); see *Haggis, supra*, 22 Cal.4th at p. 499, quoting *Morris*.)

■ While a public entity's exercise of discretion may often mark the dividing line between a duty that is mandatory and one that is not (*Haggis, supra*, 22 Cal.4th at p. 498), that line is sometimes difficult to draw. (See *Johnson v. State of California* (1968) 69 Cal.2d 782, 788–789 [73 Cal.Rptr. 240, 447 P.2d 352] (*Johnson*) [rejecting semantic and literal definitions of "discretion" and adopting rule based on policy considerations];[7] see also *Creason, supra*, 18 Cal.4th at pp. 631–633 [holding Dept. of Health Services had substantial discretion to formulate and report appropriate testing standards for hypothyroidism].) In *Creason*, we had little difficulty concluding that "[t]he drafting of rules, regulations and standards by the governmental agency charged with that responsibility would unquestionably fall in the category of discretionary 'basic policy decisions' for which governmental agencies usually are insulated from civil liability." (*Creason, supra*, 18 Cal.4th at p. 633, citing *Johnson, supra*, 69 Cal.2d at pp. 793–794.) However, in cases not involving a public entity's " 'quasi-legislative policy-making' " (*Creason, supra*, 18 Cal.4th at p. 633), the inquiry should focus on whether the entity must "render a considered decision" (*Johnson, supra*, 69 Cal.2d at p. 795, fn. 8), one requiring its expertise and judgment (*Haggis, supra*, 22 Cal.4th at pp. 506–507; but see *Morris, supra*, 18 Cal.3d at p. 905 ["the county enjoyed no discretion to ignore the dictates of Labor Code section 3800 . . ."]).

For instance, in *Haggis*, which involved local ordinances on property development in landslide zones, one ordinance at issue required the City of Los Angeles "first, to determine the location and boundaries of the areas requiring affidavits, and, second, to decide whether the instability of a given property is of such magnitude as to cause an immediate hazard to occupancy of the proposed development." (*Haggis, supra*, 22 Cal.4th at p. 506.) Recognizing the "pervasively discretionary nature" of the city's authority, we held that the ordinance, as a whole, "provides the City with such significant

---

[7] Although our decision in *Johnson, supra*, 69 Cal.2d 782, concerned the statutory immunity for a public employee's "discretionary" acts (Gov. Code, § 820.2), we recognized that such cases as *Johnson* "obviously are instructive in determining whether 'mandatory acts' liability should be imposed." (*Creason, supra*, 18 Cal.4th at p. 633 [applying *Johnson*'s distinction between "planning" and "operational" levels of decisionmaking to determine if duty is mandatory under Gov. Code, § 815.6]; cf. *Barner v. Leeds* (2000) 24 Cal.4th 676, 685, fn. 2 [102 Cal.Rptr.2d 97, 13 P.3d 704] [rejecting criticism of *Johnson* based on stare decisis].)

discretion in whether to issue or withhold permits as to make Government Code section 815.6 inapplicable." (*Ibid.*) We similarly concluded that another ordinance, which called on "the judgment, expertise and discretion of the City's staff to evaluate" whether the slope stabilization was " 'satisfactorily demonstrated' " under the ordinance, also did not create a mandatory duty. (*Id.* at p. 507; see also *Braman v. State of California* (1994) 28 Cal.App.4th 344, 351 [33 Cal.Rptr.2d 608] (*Braman*) ["very essence of discretion is the power to make 'comparisons, choices, judgments, and evaluations' "]; *de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 261 [67 Cal.Rptr.3d 253] [no mandatory duty where "the predicate enactment confers on government officials the discretion to evaluate and decide how best to implement the required security"]; cf. *Ortega v. Sacramento County Dept. of Health & Human Services* (2008) 161 Cal.App.4th 713, 733 [74 Cal.Rptr.3d 390] [Gov. Code § 820.2, "the collection and evaluation of information is an integral part of 'the exercise of the discretion' . . . "].)

Before we address the specific provisions of the Safe Drinking Water Act and regulations at issue here, it is helpful to have a basic framework of the statutory scheme as it relates to this case.

### B. *The Safe Drinking Water Act*

The Legislature enacted the Safe Drinking Water Act (Act) in part to "ensure that the water delivered by public water systems of this state shall at all times be pure, wholesome, and potable." (Health & Saf. Code, § 116270, subd. (e) [legislative findings and declaration].)[8] To achieve the goals of the Act, the Legislature established a drinking water regulatory program within the Department. (Health & Saf. Code, § 116270, subd. (g); see *ante*, at p. 896, fn. 4.)

 Among other things, the Department has the responsibility to "adopt primary drinking water standards for contaminants in drinking water" (Health & Saf. Code, § 116365, subd. (a)), which standards include MCL's, specific treatment techniques, and monitoring and reporting requirements specified by the Department. (*Id.*, § 116275, subd. (c)(1)–(3) [defining " '[p]rimary drinking water standards' "]; see *Groundwater Cases, supra,* 154 Cal.App.4th at p. 678.) The Department must also "adopt regulations it determines to be necessary to carry out the purposes of [the] chapter." (Health & Saf. Code,

---

[8] This legislative objective itself, however, does not create a mandatory duty within the meaning of Government Code section 815.6. (*Groundwater Cases, supra,* 154 Cal.App.4th at pp. 691–692 [collecting cases].)

§ 116375; see *id.*, § 116375, subds. (a)–(j) [inclusive list of types of regulations].) The Act and its implementing regulations are comprehensive and detailed. (See *Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, 268–269 [115 Cal.Rptr.2d 874, 38 P.3d 1098] [describing general statutory scheme under the Act]; see also *Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 704 [34 Cal.Rptr.3d 19] [same]; *City of Watsonville v. State Dept. of Health Services* (2005) 133 Cal.App.4th 875, 887 [35 Cal.Rptr.3d 216] ["Pursuant to its legislative mandate, [Department] has developed comprehensive drinking water standards, which include standards for fluoride."].)

As relevant here, the County is a local primacy agency (see Health & Saf. Code, § 116275, subd. (r)), that assumed the Department's role in administering and enforcing the Act for designated public water systems in its jurisdiction.[9] Pinch was the operator of one such system at Jensen Camp.[10] For purposes of this appeal, any duties imposed under the Act and implementing regulations (along with any liability resulting from any breach thereof), are identical for the Department and for the County. Only the County's duties are at issue here, and we focus on them.[11]

---

[9] Under a local primacy delegation agreement, the Department "may delegate primary responsibility for the administration and enforcement of this chapter within a county to a local health officer" designated as a local primacy agency. (Health & Saf. Code, § 116330, subd. (a); see *id.*, § 116330, subd. (f) ["local primacy agency . . . empowered with all of the authority granted to the department by this chapter over those water systems"].) The Department, however, does not "relinquish its authority, but rather shall retain jurisdiction to administer and enforce this chapter for the designated water systems to the extent determined necessary by the department." (*Id.*, § 116330, subd. (a).)

The Department has delegated primacy to local primacy agencies in 35 of the 58 counties to regulate public water systems serving fewer than 200 connections. (Dept., Small Water Systems: Technical Support Unit (Apr. 4, 2008 update) available online at <http://www.cdph.ca.gov/certlic/drinkingwater/pages/smallwatersystems.aspx> [as of June 22, 2009].) The Department's Web site indicates that these local primacy agencies regulate approximately "1,600 community water systems and 3,900 non-community water systems." (*Ibid.*) There are approximately "7,500 public water systems" in the state. (Dept., Drinking Water Program (June 3, 2009 update) available online at <http://www.cdph.ca.gov/programs/pages/dwp.aspx> [as of June 22, 2009].)

[10] The Act and applicable regulations contain varying references to the public water system. (See Health & Saf. Code, § 116275, subd. (h) [defining "public water system"]; *id.*, subd. (i) [defining "community water system" as a type of public water system]; *id.*, subd. (aa) [defining "small community water system"]; § 64402.20 ["water supplier," "person operating a public water system," and "supplier of water" used interchangeably to mean "any person who owns or operates a public water system"]; § 64400.10 [defining "community water system"].) Neither party asserts that the distinction among the terms, if any, makes any difference to the issue here.

[11] As relevant here, the references to the "Department," "local primacy agency," or "local health officer" in the applicable statutes and regulations are all to the County unless otherwise noted. (See Health & Saf. Code, §§ 116275, subd. (r), 116330; see also §§ 64251, subd. (a)(2), 64252.)

### C. *Does the County Have an Implied Duty to Direct a Water System Operator to Notify Consumers of Water Contamination?*

■ As the Court of Appeal noted and the parties agree, the express duty to notify consumers of any water contamination rests on the operator of the water system, not the local primacy agency. (Former § 64464.3, subd. (a)(1) ["water supplier shall notify the [local primacy agency] and the persons served by the water system"].) ■ There is no mandatory duty imposed on a public entity if the specified enactment is inapplicable to that entity. (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 939 [80 Cal.Rptr.2d 811, 968 P.2d 522] ["By its terms, Education Code section 44807 requires only 'teacher[s]' to hold pupils to a strict account for their conduct; it does not purport to impose a mandatory duty more broadly on any public entity."]; *Forbes, supra,* 101 Cal.App.4th at p. 54.)

However, the Court of Appeal held that the County had an *implied* mandatory duty to direct a water system operator to notify consumers of any contamination. This implied duty is at the heart of plaintiffs' action. To reach this holding, the court made several conclusions about the County's various mandatory duties as a local primacy agency. (See §§ 64256, 64257; former §§ 64464.1, 64464.3; see also *ante,* at pp. 896–897.) It held that the County had an express duty to notify Pinch of his water monitoring and reporting requirements (§ 64256, subd. (a)), which assertedly included his duty to notify his customers that the water was contaminated. It also concluded that the County had the express duty to review a system's water quality reports (§ 64256, subd. (e)), and to report compliance violations to the Department (§ 64257, subd. (a)), and that this duty "presumes that the primacy agency will evaluate the reports to identify violations." Finally, the court held that the notification regulations (former §§ 64464.1, 64464.3) "unquestionably presumed that the local primacy agency would respond to reports of contamination and direct the water system to notify the persons served and to specify the manner in which the notification was to be given."

Urging us to adopt the Court of Appeal's reasoning, plaintiffs maintain that case law and public policy considerations support their claim that an implied mandatory duty exists here. (See *Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180 [89 Cal.Rptr.2d 768] (*Alejo*); *Walt Rankin & Associates, Inc. v. City of Murrieta* (2000) 84 Cal.App.4th 605 [101 Cal.Rptr.2d 48] (*Rankin*); *Braman, supra,* 28 Cal.App.4th 344.) As we explain further below, the Court of Appeal's holding rests largely on its erroneous interpretation of several regulations, which assertedly imposed certain duties. We conclude that the cited regulations do not individually or collectively impose an implied mandatory duty on the County to direct Pinch to notify consumers when water contamination occurs.

We discuss each underlying duty in turn, beginning with the language of each enactment. (*Haggis, supra*, 22 Cal.4th at p. 499.)

1. *Duty to Notify Water System of Monitoring and Reporting Requirements (§ 64256, subd. (a))*

Section 64256 is directed to the local primacy agency: "The local primacy agency shall notify each small water system under its jurisdiction in writing of the monitoring requirements for that system pursuant to Title 22, Division 4, Chapters 15, 17, and 17.5 of the California Code of Regulations.[12] The notice shall identify the specific contaminants to be monitored, the type of laboratory analyses required for each contaminant, the frequency of sampling and any other sampling and reporting requirements applicable to that system." (§ 64256, subd. (a).)

■ The regulation's language clearly provides that the County shall give the water system written notice of the system's monitoring, sampling, and reporting requirements; it makes no reference to any *notification* requirements, such as those contained in former sections 64464.1 and 64464.3. While plaintiffs use the terms "report" and "notify" interchangeably, those terms are used distinctively under the Act and the regulations. (See Health & Saf. Code, § 116375, subds. (a), (f) [Dept. shall adopt regulations for "[t]he monitoring of contaminants, including the type of contaminant, frequency and method of sampling and testing, and the *reporting* of results," and "[r]equirements for *notifying* the public of the quality of the water delivered to consumers" (italics added)]; Cal. Code Regs., tit. 22, ch. 15, art. 18 [*Notification* of Water Consumers and the Department]; *id.*, art. 19 [Records, *Reporting* and Recordkeeping]; *id.*, art. 4.1, § 64433.7 [Recordkeeping, *Reporting*, and *Notification* for Water Systems Fluoridating].) Thus, contrary to plaintiffs' assertion, section 64256, subdivision (a), does not impose any duty on the County to inform Pinch of his notification duties under former section 64464.3.

Moreover, even assuming that section 64256, subdivision (a), does refer to a water system operator's notification requirements, the issue here is not whether the County failed to inform Pinch of such requirements *generally*, that is, that he had an ongoing obligation to notify the Department (or the local primacy agency here) and the water consumers "whenever . . . [t]he water supplied to the consumers . . . exceeds the maximum contaminant levels for inorganic chemicals." (Former § 64464.3, subd. (a)(1); see also

---

[12] Chapter 15, titled "Domestic Water Quality and Monitoring Regulations," currently covers sections 64400 through 64483, which include the regulatory provisions at issue here. Chapter 17 (§§ 64650–64666), which is titled "Surface Water Treatment," and Chapter 17.5 (§§ 64670–64692), which is titled "Lead and Copper," are not relevant here.

Health & Saf. Code, § 116450, subd. (a) [Act's corresponding notification provision].) Rather, plaintiffs claim that the County failed to direct Pinch to notify the Jensen Camp residents of *specific* instances of water contamination in 1995 and 1999. To address this claim, we focus on sections 64256, subdivision (e), and 64257, subdivision (a), which, in part, the Court of Appeal found implied such a duty.

> 2. *Duty to Review Water System's Monitoring Reports and to Report Compliance Violations (§§ 64256, subd. (e), 64257, subd. (a))*

■ Section 64256, subdivision (e), provides in pertinent part: "The monitoring reports shall be reviewed [by the local primacy agency] each month for each small water system and the data entered into the data management system at least monthly." Section 64257, as relevant here, provides that the local primacy agency "shall . . . submit[]" to the Department monthly reports summarizing a water system's compliance violations. (§ 64257, subd. (a).)

Based on these regulations, the Court of Appeal found that the County had mandatory duties to review a water system's monitoring reports and to report compliance violations to the Department. These duties, the court went on, necessarily presumed that the County would evaluate the reports to identify any violations. Relying on the reasoning in *Alejo, supra,* 75 Cal.App.4th 1180, the court held that the County had an *implied* duty to direct Pinch to notify consumers of any contamination. It added that a contrary interpretation "would defeat the purpose of the law, which is 'to ensure that the water delivered by public water systems of this state shall at all times be pure, wholesome, and potable,' (Health & Saf. Code, § 116270, subd. (e))."

We disagree with the Court of Appeal's reasoning, which plaintiffs urge us to adopt. Even assuming that any duty to review these reports (§ 64256, subd. (e)) and to report compliance violations to the Department (§ 64257, subd. (a)) would indicate that the County will respond to accounts of water contamination, it does not inevitably follow that the County's response would be to instruct the water system to notify affected consumers, particularly when the system is already under an express duty to do so (see *ante,* at p. 902). (See *Brenneman v. State of California* (1989) 208 Cal.App.3d 812, 818 [256 Cal.Rptr. 363] [a mandatory duty to investigate is not a mandatory duty to take action].) *Alejo* does not compel a contrary conclusion.

In *Alejo,* the enactment at issue (Pen. Code, former § 11166, subd. (a)) provided that an employee of a child protective agency (such as the police department) "shall report" any known or reasonably suspected instances of

child abuse. (*Alejo, supra*, 75 Cal.App.4th at pp. 1185–1186.) Relying on the statutory language, prior cases, and public policy considerations, the *Alejo* Court of Appeal found this enactment imposed two mandatory duties on a police officer who received an account of child abuse—the duty to investigate and the duty to file a report of child abuse when an objectively reasonable person in the same situation would suspect abuse. (*Alejo, supra*, 75 Cal.App.4th at pp. 1186–1188.) Although Penal Code former section 11166, subdivision (a), did not include the term "investigate," the Court of Appeal found such an *implied* duty because it concluded the enactment "clearly envisions some investigation in order for an officer to determine whether there is reasonable suspicion to support the child abuse allegation and to trigger a report to the county welfare department and the district attorney under section 11166, subdivision (i), and to the Department of Justice under section 11169, subdivision (a)." (*Alejo, supra*, 75 Cal.App.4th at p. 1186.) This latter section required the child protective agency to forward to the Department of Justice a written report of "every case it investigates of known or suspected child abuse which is determined not to be unfounded," and proscribed the agency from forwarding a report "unless it has conducted an active investigation and determined that the report is not unfounded." (Pen. Code, former § 11169, subd. (a), quoted in *Alejo, supra*, 75 Cal.App.4th at p. 1186.) As the statutory scheme clearly contemplated, the officer's express duty to report was necessarily predicated on the officer first investigating the accounts of child abuse. (See *Nunn v. State of California* (1984) 35 Cal.3d 616, 625 [200 Cal.Rptr. 440, 677 P.2d 846] [harmonizing parts of enactment "by considering the particular clause in the context of the whole statute"].)

In contrast to *Alejo*, plaintiffs here have identified no enactment in which an express duty is necessarily predicated or dependent on a county directing a water system to notify consumers of contaminated water.[13] Contrary to plaintiffs' contention, section 64256, subdivision (a), is not such an enactment because as we have explained (see *ante*, at p. 903), it does not require

---

[13] Moreover, *Rankin, supra*, 84 Cal.App.4th 605, and *Braman, supra*, 28 Cal.App.4th 344, are distinguishable and do not support imposing an implied mandatory duty in this case. In *Rankin*, the Court of Appeal held that even though Code of Civil Procedure section 995.310's "plain language . . . [did] not per se impose a duty on" the city to ensure that a surety providing a bond on one of its public works projects is one of three categories of insurers, the court imposed such a duty. (*Rankin, supra*, 84 Cal.App.4th at p. 621.) Reading this statute in conjunction with statutes requiring a payment bond as a condition of being awarded a contract by a public entity (Civ. Code, §§ 3247, 3248), the Court of Appeal found that these statutes together imposed a duty on the city to make sure that the payment bond surety is an admitted surety insurer. "As the public entity is the one required to approve the subject bond, it stands to reason that the public entity must be the one to require compliance with Code of Civil Procedure section 995.310. Any other interpretation would render the provision meaningless." (*Rankin, supra*, 84 Cal.App.4th at p. 621.) In *Rankin*, the city alone had the duty to ensure that its public works projects were properly bonded; thus, it was reasonable to impose the specific duty under Code of Civil Procedure section 995.310. In contrast here, the water system

the County to inform a water system of its notification requirements. Plaintiffs question then, what is the purpose of the County reviewing a water system's monitoring reports if not to receive notice of water contamination and to act accordingly. Even if the main purpose of reviewing the reports is to receive notice of any contamination, it does not necessarily follow that a local primacy agency's response must be to direct a water system to notify consumers. Instead, a local primacy agency's response can be varied.

■ In responding to noncomplying water systems, local primacy agencies "have the same administrative authority as [the Department] to cite and fine noncomplying water systems. [Local primacy agencies] may conduct office hearings where they hear the testimony of an alleged noncomplying company . . . As a last resort, the [local primacy agencies] may utilize the County District Attorney to initiate court actions against recalcitrant water systems." (*Final Opinion Resolving Substantive Water Quality Issues* (2000) Cal.P.U.C. Dec. No. 00-11-014, 2000 Cal.P.U.C. Lexis 722, *22–*23]; see Health & Saf. Code, § 116330, subd. (f) [local primacy agency "shall be empowered with all of the authority granted to the department" over specified water systems]; § 64258, subd. (a) ["local primacy agency shall take enforcement actions as necessary to assure" that water systems "are in compliance" with regulations].) These various options underscore that a local primacy agency has discretionary authority in this context. (See *Braman, supra,* 28 Cal.App.4th at p. 351.)

Based on the foregoing, we conclude that sections 64256, subdivision (e), and 64257, subdivision (a), do not support imposing an implied mandatory duty on the County.

### 3. *Notification Regulations (former §§ 64464.1 and 64464.3)*

■ Contrary to the Court of Appeal's conclusion and plaintiffs' contention, the notification regulations (former §§ 64464.1, 64464.3) also do not

---

operator, Pinch, and not the local primacy agency, the County, is expressly charged with notifying affected consumers. The effectiveness of the notification procedure is not wholly dependent on the local primacy agency's instruction to a water system operator to notify consumers.

In *Braman,* the Court of Appeal found that the Department of Justice had a mandatory duty under Penal Code section 12076 to investigate a person's eligibility to purchase a concealable firearm and to notify a gun dealer if a prospective purchaser is ineligible. (*Braman, supra,* 28 Cal.App.4th at p. 351.) Contrary to plaintiffs' suggestion, the department's duty to act on its examination of records was expressly set out in the statute. (*Id.* at p. 350, quoting Pen. Code, § 12076, former subd. (c) ["The department shall examine" records to determine if a person is disqualified from purchasing a concealable firearm. "If the department determines that the purchaser or transferee is" disqualified, "it shall immediately notify the dealer of that fact." (Stats. 1990, ch. 1090, § 2, p. 4550.)].) Thus, *Braman* does not lend support to plaintiffs' argument.

support imposing an implied duty here. By their terms, former sections 64464.1 and 64464.3 focused on the notification obligations of Pinch as the operator of the water system. Former section 64464.3, subdivision (a), provided: "Unless otherwise directed by the [local primacy agency], the water supplier shall notify the [local primacy agency] and the persons served by the water system whenever" the supplied drinking water exceeds bacteriological quality limits or MCL's, or the water supplier fails to comply with a prescribed treatment technique or violates any schedule. (Former § 64464.3, subd. (a)(1)–(3).) This section also set out how community water systems were to give notice to the public. (*Id.*, subd. (b)(1)(A)–(D).)[14] Subdivision (b)(1) provided that if there is water contamination, the water supplier "shall" give notice to affected consumers by way of a daily newspaper and by mail or hand delivery. (Former § 64464.3, subd. (b)(1)(A); see former § 64464.1, subd. (a)(2), (4), (5).) While this subdivision was specific and, by its terms, self-executing, former section 64464.3 went on to describe several contingencies where a local primacy agency may intervene: "If the [local primacy agency] finds that" (1) there is no daily newspaper, the method of notification is by weekly newspaper and by mail or hand delivery (former § 64464.3(b)(1)(B)); (2) there is no daily or weekly newspaper, the notification method is by expedited hand delivery or by posting in conspicuous places "as directed by the [local primacy agency] based on the degree of health risk and the nature of the population served by the system" (*id.*, subd. (b)(1)(C)); or (3) "additional notification is necessary, then it may direct the community water system to carry out such notification required to adequately alert the public to the risk" (*id.*, subd. (b)(1)(D)).

Also relevant here, former section 64464.1, which described the 12 different notification methods, stated: "When a water supplier is required to provide notice pursuant to section 64464.3, or 64464.6, or 64465, then the

---

[14] Former section 64464.3, subdivision (b)(1) specifically provided: "The notice to the public pursuant to paragraph (a) shall be given in accordance with the following methods which are described in [section] 64464.1:

"(1) For community water systems:

"(A) By Method 2, and by Method 4 or 5; or

"(B) If the [local primacy agency] finds that there is no daily newspaper of general circulation serving the area served by the system, by Method 3 and by Method 4 or 5; or

"(C) If the [local primacy agency] finds that there is no daily or weekly newspaper of general circulation serving the area served by the system, then by Method 6 or 7 as directed by the [local primacy agency] based on the degree of health risk and the nature of the population served by the system;

"(D) If the [local primacy agency] finds that, based on the degree of health risk and the nature of the population served, additional notification is necessary, then it may direct the community water system to carry out such notification required to adequately alert the public to the risk."

notice shall be provided using one or more of the following methods as directed by the [local primacy agency] pursuant to sections 64464.3, 64464.6, or 64465 . . . ." (Former § 64464.1, subd. (a); *id.*, subd. (a)(1)–(12) [explaining notification methods 1–12].)[15]

 We conclude that in specifying how notice should be given to the public, these former sections permitted, but did not obligate, a local primacy agency to intervene in the notification process. (See *Haggis, supra*, 22 Cal.4th at p. 498; *Fox v. County of Fresno* (1985) 170 Cal.App.3d 1238, 1244 [216 Cal.Rptr. 879] ["These portions of the statute clearly give the enforcement authority a choice, therefore discretion, to choose which course of action would be appropriate when a violation is found."].) The regulatory language ("If the [local primacy agency] *finds*") underscores that the decision to intervene was based on the agency's judgment and discretion. (Former § 64464.3, subd. (b)(1)(B)–(D).) For instance, under former section 64464.3, subdivision (b)(1)(D), the local primacy agency must not only "find" whether "based on the degree of health risk and the nature of the population served, additional notification is necessary," it must also determine what notice will "adequately alert" the public of the risk. These actions clearly call for the exercise of the County's discretion, and compel the conclusion that the County was not under a mandatory duty to act. (*Haggis, supra*, 22 Cal.4th at p. 498; see *Braman, supra*, 28 Cal.App.4th at p. 351 ["very essence of discretion is the power to make 'comparisons, choices, judgments, and evaluations' "].) Indeed, the introductory phrase of this former section ("[u]nless otherwise directed by the [local primacy agency]"), which does not specify, much less require, that any particular action be taken or not taken, only underscores that the County has discretionary authority to intervene in this notification process. (Former § 64464.3, subd. (a); see *ante*, at p. 898; *O'Toole, supra*, 140 Cal.App.4th at p. 510; *Clausing, supra*, 221 Cal.App.3d at p. 1240.)

Likewise, former section 64464.1 did not impose any particular mandatory duty on the County. As noted above, former section 64464.1 provided that when a water supplier must give notice of any water contamination under former section 64464.3, "the notice shall be provided using one or more of the following methods *as directed by the [local primacy agency] pursuant to section[] 64464.3* . . . ." (Former § 64464.1, subd. (a), italics added.) This italicized portion, which precedes descriptions of the various notification methods, merely cross-references the notification procedure outlined in

---

[15] As relevant here, Method 4 ("Mail Delivery of Notice of Water Quality Failure") and Method 5 ("Hand Delivery of Notice of Water Quality Failure") provided that the local primacy agency "may waive the requirement" for mail or hand delivery "if it determines that" the violation or failure has been corrected within the specified 45-day period. (Former § 64464.1, subd. (a)(4), (5).)

former section 64464.3, which we have concluded does not obligate the local primacy agency to act. It does not otherwise independently impose any duty on the agency. Moreover, contrary to the Court of Appeal's suggestion, the local primacy agency's decision to waive the requirement for mail or hand delivery of a notice of water contamination *"if* it *determines* that" the violation or failure has been corrected (former § 64464.1, subd. (a)(4), (5), italics added), does not mandate that the local primacy agency intervene, but again emphasizes that a local primacy agency has the discretion to act under the regulation. (See *Braman, supra*, 28 Cal.App.4th at p. 351.)

In addition, the Act's corresponding provision governing the notice requirement for a water system (Health & Saf. Code, § 116450), also supports our conclusion that the County was under no mandatory duty to instruct Pinch to notify plaintiffs of any water contamination. Health and Safety Code section 116450, subdivision (a), provides that the operator of a public water system "shall notify the department and shall give notice to the users" of any noncompliance with drinking water standards, failure to perform a monitoring requirement, or failure to comply with any variance or exemption, *"in the manner prescribed by the department."* (Italics added.) This italicized portion does not presuppose that the Department (or the local primacy agency here) will tell a water system operator to notify consumers of any noncompliance or failure; rather, as reasonably construed, it refers to the Department's authority to adopt regulations outlining the "[r]equirements for notifying the public of the quality of the water delivered to consumers" (Health & Saf. Code, § 116375, subd. (f)), such as former section 64464.3. Indeed, this interpretation is bolstered by subdivision (e) of Health and Safety Code section 116450, which provides: "In addition, the same notification requirement shall be required in any instance in which the department or the local health department *recommends* to the operator that it notify its customers to avoid internal consumption of the water supply and to use bottled water due to a chemical contamination that may pose a health risk." (Italics added.)
Thus, this section makes clear that any specific direction to the water system to notify consumers is made *at the recommendation*, and not based on the compulsory duty, of the Department or the local primacy agency. (Cf. Health & Saf. Code, § 116450, subd. (c) [when Department "determines" there is "an immediate danger to health" based on significant rise in bacterial count of water, it "shall immediately notify" operator to implement "emergency notification plan"].)

### 4. *Other Considerations*

Contrary to the Court of Appeal's suggestion, one of the Act's purposes—"to ensure that the water delivered by public water systems of this state shall at all times be pure, wholesome, and potable" (Health & Saf. Code,

§ 116270, subd. (e))—is not a proper consideration in determining whether to find a mandatory duty here. (See *Groundwater Cases, supra,* 154 Cal.App.4th at pp. 683, 692 [Act's legislative objectives are "not 'standards' by which the actions of defendants may be judged" under Gov. Code, § 815.6].) We are mindful that an enactment's purpose may be relevant in this analysis (*Haggis, supra,* 22 Cal.4th at p. 500); however, the purpose expressed in Health and Safety Code section 116270, subdivision (e), does not directly shed light on the core duty plaintiffs seek to impose, namely, the duty to direct a water system to notify consumers of specific instances of contaminated water. (See *Paredes v. County of Fresno* (1988) 203 Cal.App.3d 1, 12 [249 Cal.Rptr. 593] ["specific standards must be and are being set" to reach general, undefined objective of " 'pure, wholesome, healthful, and potable' " water]; see also *Groundwater Cases, supra,* 154 Cal.App.4th at p. 683 ["to impose liability on water suppliers for failing to provide 'pure' water would impose on them a standard impossible to achieve"].) Indeed, the Court of Appeal's conclusion—that the failure to infer such a mandatory duty would defeat this particular purpose of the Act—only begs the question whether the Legislature or the Department (responsible for adopting the regulations) intended to impose such a duty on a local primacy agency, a question we have answered in the negative.

 We are aware that this holding appears to work some injustice against plaintiffs. As plaintiffs allege, the County was remiss in failing to fulfill a basic task, i.e., reviewing the periodic monitoring reports Pinch provided, which would have disclosed to the County the elevated MCL's in 1995 and 1999. As a result of Pinch's failure to notify the Jensen Camp residents, they drank the contaminated water for a number of years. The natural inclination is to place the County at fault because it is charged with the general oversight of public water systems in its jurisdiction, "responsible for ensuring that all public water systems are operated in compliance with this chapter and any regulations adopted hereunder." (Health & Saf. Code, § 116325.) However, as the Court of Appeal recognized, this statute itself does not require the County to perform any particular act and, as such, imposes no mandatory duty. "The controlling question is whether the enactment at issue was intended to impose an obligatory duty to take specified official action to prevent particular foreseeable injuries, thereby providing an appropriate basis for civil liability." (*Keech v. Berkeley Unified School Dist.* (1984) 162 Cal.App.3d 464, 470 [210 Cal.Rptr. 7].) Indeed, as we have explained above, there is no statute or regulation that expressly or impliedly mandates that the County instruct the water system to notify its customers of water contamination. There is no clear, explicit intent to make the County a "fail-safe" to ensure that notification takes place. "To construe a statute as imposing a mandatory duty on a public entity, 'the mandatory nature of the duty must be phrased in explicit and forceful language.'

[Citation.] 'It is not enough that some statute contains mandatory language. In order to recover plaintiffs have to show that there is some *specific* statutory mandate that was violated by the [public entity . . . .' " (*Groundwater Cases, supra*, 154 Cal.App.4th at p. 689; cf. *Braman, supra*, 28 Cal.App.4th at p. 352 [mandatory duty where "Legislature inserted language of unavoidable obligation and specified the nature of that obligation with some precision"].)

Indeed, the County's amici curiae—the California State Association of Counties and the League of California Cities and numerous state regulators of public health and safety services represented by the Attorney General—point out that imposing an implied mandatory duty in this circumstance would frustrate the Legislature's intent to secure support from counties to help administer and enforce the Act. Under the Act, the Department has delegated primacy to 35 of the state's 58 counties to oversee over half of the public water systems. (See *ante*, at p. 901, fn. 9.) As amici curiae note, "This delegation reflects a legislative preference for county regulation of local matters, at least when these localities demonstrate commitment and ability to take on regulatory responsibility." By exposing these public entities to unanticipated liability and unforeseen fiscal burden, counties will be discouraged from undertaking responsibility of the regulatory programs, thus frustrating the effective administration and enforcement of the Act.

## Conclusion

Our holding that the County was not subject to any mandatory duty for purposes of Government Code section 815.6 liability is limited to the *implied* duty to instruct a water system to notify consumers of water contamination.

Notwithstanding the Court of Appeal's conclusions on various express duties of the County, the lower court made such conclusions in the context of finding an implied duty. It did not, however, determine whether there are any express mandatory duties that would, in and of themselves, give rise to an action under Government Code section 815.6.[16]

---

[16] Given our holding, it is unnecessary to discuss whether any duties were intended to protect against the alleged injuries suffered or to address the proximate cause element. (Gov. Code, § 815.6; see *ante*, at p. 898.) It is also unnecessary to address whether any of the identified immunity statutes (Gov. Code, §§ 818.2, 818.4, 818.6, 820.4, 820.8, 821, 821.2, 821.4), would apply here. (*Creason, supra*, 18 Cal.4th at p. 630 [question of liability precedes that of statutory immunity].) However, in remanding the matter to the Court of Appeal, we do not perceive the Court of Appeal's previous conclusions on these matters to foreclose the County's ability to raise these issues with respect to any express mandatory duty.

Therefore, we reverse the Court of Appeal's judgment with directions to determine whether the County has any express mandatory duties that are actionable under Government Code section 815.6.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.