Filed 4/26/21  Rivas v. Los Angeles Housing Authority CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARIA HAYDEE RIVAS, | B298310 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC651773) |
| v. | |
| LOS ANGELES HOUSING AUTHORITY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

The Law Office of Herb Fox, Herb Fox; D & Z Law Group, Erik Zograbian; Bedirian & Associates, Sara Bedirian for Plaintiff and Appellant.

Joseph L. Stark & Assoc., Joseph L. Stark and John M. Bergerson for Defendant and Respondent.

_____

A tenant in public housing suffered injuries resulting from a fire in her unit that occurred while she was asleep. She sued the housing authority for negligence but admittedly had no memory of the fire, and no evidence indicated how it started. The trial court concluded no triable issue existed as to whether the housing authority's negligence caused the tenant's injury, and granted the authority's motion for summary judgment. We affirm.

## BACKGROUND

Maria Haydee Rivas was a tenant at Pueblo Del Rio, a low-income housing complex owned and operated by the Housing Authority for the City of Los Angeles (Housing Authority). On February 29, 2016, Rivas went to bed and fell asleep. Her next memory was waking up in the hospital months later.

While Rivas slept, a fire started in her unit. A neighbor heard screams from Rivas's open bedroom window, and first responders found her unconscious under her bed. Rivas had no knowledge about what caused the fire, which the Los Angeles Fire Department concluded was of undetermined origin.

Rivas sued the Housing Authority for negligence and negligence per se. Most of her claims pertained to defective smoke alarms, which she alleged created a dangerous condition of public property and violated safety laws and regulations. However, at some point Rivas abandoned her claims pertaining to smoke alarms, so we will focus on the one claim she pursues on appeal, which concerns failure to disclose the existence or operation of a safety release mechanism on bars covering her bedroom window.

In her negligence cause of action, Rivas alleged that the Housing Authority negligently "[f]ailed to notify [her] of the

2

mechanism utilized for the release of the [bars on her] window."
In her negligence per se cause of action, Rivas alleged that the
Housing Authority's "failure to maintain emergency escape and
rescue openings" violated building codes.

The Housing Authority moved for summary judgment. It
argued Rivas could not establish that a dangerous condition
existed in the unit, nor that the Housing Authority had notice of
such a condition. The Housing Authority supported the motion
with evidence that the unit's smoke alarms were operational, and
with Rivas's own testimony that she had no knowledge of
whether the safety release mechanism operated, and had never
reported any problem with it.

In opposing the motion, Rivas argued that Health and
Safety Code section 17958.4 obligated the Housing Authority to
disclose to her the existence of a safety release mechanism on the
bars of her bedroom window, a theory not mentioned in the
complaint.

Rivas supported the motion with her own deposition
testimony that no one had told her about the safety release
mechanism, and her declaration that she did not know how to
operate the mechanism. And Marcela Corona, a Housing
Authority employee, testified she had no record of Rivas being
told about the mechanism.

Rivas admitted she had no evidence about what caused the
fire, and no direct evidence about how she tried to escape from it.
But an emergency room triage note indicated that someone from
the Los Angeles Fire Department told someone on the hospital
staff that Rivas had been found unconscious under her bed, and
Shaquille Brown, a neighbor, declared that he heard female
screams coming from Rivas's open bedroom window for "a while"

3

during the fire.  A photograph of her bedroom showed her bed, which was undamaged in the fire, was situated against the wall underneath the window.  Other photographs showed that Rivas suffered substantial burns.

The Housing Authority objected to Rivas's declaration on the ground that it contradicted her deposition testimony.  It objected to the emergency room triage note on the ground that it constituted inadmissible hearsay, and to the Brown declaration on the ground that Brown had not been disclosed as a witness.  The record on appeal contains no indication that the trial court ruled on these objections.

In reply to the opposition, the Housing Authority conceded that no document evidenced Rivas having been told about the window bar release mechanism, but evidence that Rivas was cited several times for blocking access to the mechanism showed she knew it was there.  The Housing Authority argued it was "inconceivable" that Rivas did not know how to use the mechanism after having lived in the unit for seven years.

The trial court concluded there was no evidence of a dangerous condition in Rivas's unit, nor that the Housing Authority knew of any such condition.

The court assumed that Health and Safety Code section 17958.4 obligated the Housing Authority to disclose the safety release mechanism to Rivas in writing, and found that evidence existed that it failed to do so.  But the court found no evidence that the Housing Authority's failure to make this disclosure caused Rivas's injuries, because she did "not allege that she attempted to escape via the barred windows," and "testified that she has no knowledge as to whether she tried to use the escape windows."  Therefore, the court concluded, the Housing

4

Authority's "failure to disclose the existence of the safety release mechanism was not a substantial factor in causing harm to" Rivas. The court therefore granted the Housing Authority's motion and entered judgment against Rivas.

## DISCUSSION

Rivas contends that triable issues exist as to whether: (1) The Housing Authority owed a duty to disclose to her how to operate the locking mechanism on her window; (2) it failed to do so; and (3) that failure proximately caused her injuries. We conclude the Housing Authority owed Rivas no mandatory duty.

## A.      Legal Principles

A public entity is not liable "[e]xcept as otherwise provided by statute." (Gov. Code, § 815; see *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932.) Government Code section 815.6, provides, "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Gov. Code, § 815.6.)[1] "Thus, the government may be liable when (1) a mandatory duty is imposed by an enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused

---

[1] "Government Code section 815.6 applies the negligence per se doctrine to public entities." (*Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180, 1185, fn. 3, disapproved on another ground by *B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 188, fn. 6.)

5

injury." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 348.)

To establish a mandatory duty, "the enactment at issue [must] be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498.) "Courts have . . . [found] a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.' " (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898.) " ' "[T]he mandatory nature of the duty must be phrased in explicit and forceful language." [Citation.] "It is not enough that some statute contains mandatory language. In order to recover plaintiffs have to show that there is some *specific* statutory mandate that was violated by the [public entity]. . . ." ' " (*Id.* at pp. 910-911.)

Whether an enactment imposes a mandatory duty "is a question of statutory interpretation for the courts." (*Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 631.)

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*) ["A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action," or that there is a complete defense to the claim]; Code Civ. Proc., § 437c, subds. (c), (o)(1) & (o)(2).) If the defendant makes such a showing, the plaintiff must then demonstrate the existence of one or more disputed issues of material fact as to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)

6

On appeal, we independently review the entire record that was before the trial court when it granted summary judgment, except any evidence "to which objections have been made and sustained." (*Regents*, *supra*, 4 Cal.5th at p. 618.) We view evidence in a light most favorable to the opposing party, and resolve evidentiary doubts and ambiguities in that party's favor. (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 606.)

## B.    Application

### 1.    The Burden on Summary Judgment Shifted to Rivas

Rivas preliminarily argues that the Housing Authority's motion for summary judgment addressed only her cause of action for negligence, ignoring her cause of action for negligence per se. Therefore, she argues, the burden never shifted to her to establish a triable issue as to that cause of action. We disagree.

Rivas contends only that the Housing Authority breached a mandatory duty pertaining to the safety release mechanism on the bars outside her bedroom window. Her only allegation concerning that mechanism in her cause of action for negligence per se was that the Housing Authority's "failure to maintain emergency escape and rescue openings" violated building codes. The Housing Authority moved for summary judgment on the ground that no dangerous condition existed in the unit, and that it had no notice of such a condition. The Authority supported the motion with Rivas's own testimony that she had no knowledge of whether the safety release mechanism operated, and had never reported any problem with it. This showing adequately addressed the cause of action for negligence per se.

7

2. Health and Safety Code section 17958.4 Imposes No Mandatory Duty

Rivas contends subdivision (b) of Health and Safety Code section 17958.4 imposes a mandatory duty on the Housing Authority to "disclose the quick release mechanism" to its tenants. We disagree.

Subdivision (a) of Health and Safety Code section 17958.4 states in pertinent part that "[a]ny city, county, or city and county, may, by ordinance, establish a date by which all residential real property with security window bars on bedroom windows shall meet current state and local requirements for safety release mechanisms on security window bars consistent with . . . the current edition of the California Building Standards Code, and any changes thereto made by the city, county, or city and county . . . ." (§ 17958.4, subd. (a).)

Although this subdivision is not directly pertinent because it imposes no duty on the Housing Authority, which is not a city or county, it provides context for subdivision (b) of Health and Safety Code section 17958.4, which Rivas argues pertains here.

Subdivision (b) of Health and Safety Code section 17958.4 states: "Disclosures of the existence of any safety release mechanism on any security window bar shall be made in writing, and may be included in existing transactional documents, including, but not limited to, a real estate sales contract . . . ." (§ 17958.4, subd. (b).)

Subdivision (b) of Health and Safety Code section 17958.4 does not itself mandate disclosure of the existence of a safety release mechanism by anyone to anyone, it provides only that when disclosure *is* mandated, it must be in writing.

8

The obligation to disclose safety release mechanisms appears in the California Building Standards Code referenced in subdivision (a) of Health and Safety Code section 17958.4. Section 12-3-13.1 of that Code provides: "Installation and operating instructions shall be provided with each system. Installation instructions shall describe how to install and initially test the system, and provide periodic testing and maintenance. Operating instructions shall be provided that include diagrams, drawing[s] and symbols describing how to operate the system and escape in the event of a fire or other emergency." (2019 Cal. Referenced Standards Code, tit. 24, pt. 12, § 12-3-13.1.)

But this section requires only that installation and operating instructions be included with each security bar system to be installed, not that they be given to homeowners, much less to end users. The only code section we have discovered that mandates communication with the *user* of a security bar system is section 12-3-12.2 of the California Building Standards Code, which provides: "Symbols or diagrams shall be marked on the manual actuator to identify how to manually release the security bars. The diagram or symbols shall be readily visible to occupants when the assembly is mounted as intended." (2019 Cal. Referenced Standards Code, tit. 24, pt. 12, § 12-3-12.2.) Rivas did not allege and does not argue that the latch on the bars covering her window lacked the required symbols or diagrams.

Subdivision (b) of Health and Safety Code section 17958.4 thus obligates no one to do anything in the first instance. It therefore necessarily imposes no obligation on a landlord to disclose the existence of a safety release mechanism to a tenant.

Accordingly, we conclude no triable issue exists as to whether the Housing Authority owed Rivas a duty to disclose the

existence of a safety release mechanism for the security bars covering her bedroom window.  Therefore, summary judgment was appropriate.  We need not reach the parties' other arguments.

## DISPOSITION

The judgment is affirmed.  Respondent is to receive its costs on appeal.

NOT TO BE PUBLISHED


CHANEY, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.