Filed 2/21/14 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| STEFAN HAGOPIAN, et al.,<br><br>    Petitioners/Plaintiffs and Appellants,<br><br>    v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>    Defendants and Respondents. | B240688<br><br>(Los Angeles County<br>Super. Ct. No. BS128597)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on January 24, 2014, be modified as follows:

1.  On pages 11 and 12, the last paragraph on page 11 continuing to page 12 is deleted and replaced by the following:

"In 1981, the Legislature enacted section 30600.5, which provides in pertinent part the following:"

This change has the further effect of deleting footnote 2 on page 12.

2.  On page 13, the last full paragraph beginning with "The interim authority granted by sections 30600 and 30600.5 . . . ," the reference to section 30600 is stricken,

so that the sentence now begins with "The interim authority granted by section 30600.5 . . . ."

3. On pages 26 and 27, the last two paragraphs on page 26 and the first two paragraphs on page 27 are stricken and replaced with the following:

"Subdivision (b) of section 30600 provides in pertinent part the following: "Prior to certification of its local coastal program, a local government may, with respect to any development within its area of jurisdiction in the coastal zone and consistent with the provisions of Sections 30604, 30620, and 30620.5, establish procedures for the filing, processing, review, modification, approval, or denial of a coastal development permit." Sections 30604, 20620 and 30620.5, in turn, set forth procedures for issuance and review of permits and standards by which coastal development will be evaluated. Although sections 30600 and 30600.5 both govern issuance of coastal development permits by a local government prior to certification of a local coastal program, the procedures and standards to be followed pursuant to section 30600, which was enacted in 1976 (Stats. 1976, ch. 1330), are different from those applicable under section 30600.5, enacted in 1981 (Stats. 1981, ch. 1173, § 19). Whether the latter statute superseded the former is not at issue today."

These modifications effect no change in the judgment.
TO BE PUBLISHED.

MALLANO, P. J.　　　　　　ROTHSCHILD, J.　　　　　　CHANEY, J.

2

Filed 1/24/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| STEFAN HAGOPIAN, et al., | No. B240688 |
|     Petitioners/Plaintiffs and Appellants, | (Super. Ct. No. BS128597) |
|   v. | |
| STATE OF CALIFORNIA, et al., | |
|     Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  James C. Chalfant, Judge.  Affirmed.

Blum Collins, Craig M. Collins and Gary Ho, for Petitioners/Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, John A. Saurenman, Assistant Attorney General, Christina Bull Arndt, Deputy Attorney General, for Respondent State of California.

Meyers, Nave, Riback, Silver & Wilson, Deborah J. Fox and Peter S. Hayes; John F. Krattli, County Counsel, Richard D. Weiss, Deputy County Counsel, and Lawrence L. Hafetz, Assistant Counsel, for Respondent County of Los Angeles.

_____

Under the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.; hereafter the Coastal Act), any person wishing to develop property in a coastal zone in California must first obtain a coastal development permit, which is issued in some zones by the California Coastal Commission (the Commission) and in others by local governments. A person who develops coastal property without a permit may be exposed to substantial civil penalties and subjected to a restoration order.

Stefan, Kathryn and Rahel Hagopian (appellants or petitioners) developed coastal property without first seeking or obtaining coastal development permits and were issued cease and desist and restoration orders by the Commission. They appeal from the judgment entered after the trial court denied their petition for a writ of mandate against the Commission and the County of Los Angeles. The trial court rejected petitioners' challenge to the Commission's jurisdiction and proceedings, rejected their argument that the county should be compelled to assume permitting authority under the Coastal Act, and denied their claims for declaratory and injunctive relief.

On appeal, petitioners argue (1) the County of Los Angeles is the proper permitting body for the coastal zone in which their property is located; (2) the county should be ordered to assume this permitting authority; (3) the Commission should be ordered to compel the county to fulfill this obligation; (4) the Commission violated petitioners' due process rights and denied them a fair hearing; and (5) the Commission's findings were unsupported by substantial evidence.

We conclude the Commission is the duly authorized permitting agency for the coastal zone in which petitioners' property is located and did not err in finding petitioners' development to be in violation of the Coastal Act. We further conclude the County of Los Angeles has breached no statutory duty. We therefore affirm.

## BACKGROUND

The facts are largely undisputed. On August 27, 1987, the Commission approved a coastal development permit authorizing Everett Rollins to construct a 3,375 square foot single family residence at 1732 Topanga Skyline Drive, Topanga, an unincorporated area

2

of western Los Angeles County. The property was situated in an undeveloped, environmentally sensitive Mediterranean biome consisting of coast live oak woodlands and mixed chaparral. Rollins' coastal development permit was subject to his compliance with several conditions, including conformance with an engineering geologist's recommendations and recordation of the permit and its conditions as a deed restriction. The permit provided that "any deviation from the approved plans must be reviewed and approved by the staff and may require Commission approval."

Four years later, in 1991, Stefan and Kathryn Hagopian purchased the parcel from Rollins (Parcel 24) and in 1994 purchased an adjoining parcel (Parcel 7). In 2000, they and Rahel Hagopian purchased a third adjoining parcel (Parcel 6).

In 2007, Stefan and Kathryn applied to the Commission for a permit exemption to construct a 1,196 square foot guest house on Parcel 24. Commission staff denied the exemption, informed the Hagopians that such construction would require a coastal development permit, and sent them a blank permit application.

The Hagopians thereafter ignored permit requirements and by 2009 had begun or completed construction on at least eight structures on the property, graded for a second residence on Parcel 24, and created commercial vineyards by removing substantial swathes of vegetation, grading and filling several areas, and installing an access road, a large solar panel array, and a pool and tennis court.

The Commission issued a notice of violation of the Coastal Act on March 24, 2009, again invited the Hagopians to apply for a coastal development permit, and informed them they ran the risk of incurring fines of up to $6,000 per day and penalties of up to $15,000 per day of noncompliance.

On April 24, 2009, the Hagopians informed the Commission they intended to apply for a coastal development permit and sought an extension of time to do so. Monthly letters and telephone and face-to-face conversations followed over the next fifteen months, during which the Hagopians sought several more extensions of time, made and then withdrew an application for a permit exemption, and raised various

3

arguments why they did not need a coastal development permit. They argued the development on their property was exempt from the Coastal Act, the Commission had no jurisdiction because the County of Los Angeles was the sole permitting authority under the act, the developed areas of the property had contained no environmentally sensitive habitat, and their right to install vineyards was vested by virtue of prior use of the property for agricultural (primarily grazing) purposes. Coastal Commission staff dutifully responded to each of the Hagopians' arguments, invited them to substantiate their claims of prior agricultural use and lack of sensitive habitat, and granted at least six deadline extensions. The Hagopians never attempted to substantiate their claims or apply for a coastal development permit, but instead continued to grade and develop the property.

The Commission issued a notice of intent to record notices of violation against the subject property and commenced cease and desist and restoration order proceedings. On May 18, 2010, the Commission mailed the Hagopians a "statement of defense" form with which they could dispute allegations that they had violated the Coastal Act. After requesting and obtaining two extensions of time to submit their statement of defense, the Hagopians ultimately failed to return the form or provide any defense. On July 2, 2010, the Hagopians informed Commission staff they were no longer interested in further communications.

On August 12, 2010, the Commission held a public hearing concerning the matter, during which Commission staff presented extensive evidence of habitat destruction on the property, including before-and-after photographs showing woodland ridges had been turned into commercial vineyards. Several members of the community voiced opposition to the Hagopians' development activities, and two neighbors spoke of extensive environmental devastation caused by six years of heavy construction on the Hagopians' property.

The Hagopians presented no evidence at the hearing, but indicated they stood upon their prior communications with Commission staff. Their counsel objected to the

hearing on due process grounds, argued the Commission had no jurisdiction to issue coastal development permits because the Coastal Act vested that authority in the County of Los Angeles, and argued the Commission had no authority to hold a violation hearing because the Commission was an adversarial party in the proceedings. Counsel further argued, without explanation, that the coastal development permit issued to Rollins in 1987 authorized the Hagopians' landscaping, and their viniculture was permissible under unspecified Los Angeles County zoning regulations.

After the presentation of evidence, several of the 11 Commission members present commented that "a very egregious case" of ongoing "massive commercial development" had occurred without Commission approval, resulting in "wholesale destruction" and "mountain top removal" reminiscent of "West Virginia coal mining." The Commission unanimously found the Hagopians violated the Coastal Act and issued cease and desist and restoration orders.

On October 8, 2010, the Hagopians filed the petition, asserting the Commission lacked jurisdiction to enforce the Coastal Act in the Santa Monica Mountains area and had violated their due process rights. Petitioners admitted they had graded on the property, erected structures, and removed vegetation in a coastal zone but asserted they needed no coastal development permit to do so because they had disturbed no environmentally sensitive habitat and had obtained county building permits for all structures erected.

The petition sought a peremptory writ of mandate directing the Commission to vacate and set aside its findings of violation, rescind its cease and desist and restoration orders, and "cease requiring the Petitioners to apply for coastal development permits from the Commission (as opposed to the County)." The petition also sought a declaration that permitting authority under the Coastal Act was vested in the County of Los Angeles, not the Commission, and that the county had "issued all necessary permits for the Petitioners' actions." Petitioners further asked the superior court to order the Commission and the County of Los Angeles to agree on the terms of a local coastal

5

program and to order the county to adopt ordinances prescribing procedures to be used in issuing coastal development permits.

The trial court, Judge James C. Chalfant presiding, bifurcated proceedings. On September 29, 2011, Judge Chalfant found the Commission was the duly authorized body to issue coastal development permits, and the County of Los Angeles was under no mandatory obligation to take over that authority before its own local coastal program was certified. On February 29, 2010, the court found the Commission did not violate petitioners' due process rights and substantial evidence supported its enforcement orders.

The Hagopians timely appealed from the ensuing judgment.

## DISCUSSION

## I.      COASTAL COMMISSION

## A.      Standards of Review

Public Resources Code section 30801[1] gives an "aggrieved person," defined as anyone who appears at a public hearing of the Commission, the right to judicial review by filing a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5. "The inquiry in such a case shall extend to the questions whether the [Commission] has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the [Commission] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

Petitioners contend the Commission proceeded without jurisdiction, denied them a fair hearing, and abused its discretion by making findings unsupported by the evidence. Respondents disagree with these contentions and argue petitioners failed to exhaust their administrative remedies.

---

[1] Undesignated statutory references will be to the Public Resources Code.

6

"Where it is claimed that the findings are not supported by the evidence . . . , abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).) The reviewing trial court considers all relevant evidence, including that which detracts from the decision. A court may reverse an agency's decision only if, based on the evidence before the agency, a reasonable person could not reach the agency's conclusion. (*Paoli v. Cal. Coastal Com.* (1986) 178 Cal.App.3d 544, 550-551.) In making this determination the court presumes substantial evidence supports the agency's decision (*Ross v. California Coastal Com.* (2011) 199 Cal.App.4th 900, 921) and resolves reasonable doubts in favor of the findings and decision (*Topanga Assn. for Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514). Our review of the trial court's decision is for substantial evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824.)

We independently review whether an agency has acted within its statutory jurisdiction (*Morris v. Williams* (1967) 67 Cal.2d 733, 748; *Burke v. California Coastal Com.* (2008) 168 Cal.App.4th 1098, 1106), whether the hearing was fair (*Sabey v. City of Pomona* (2013) 215 Cal.App.4th 489, 495), and whether the exhaustion of administrative remedies doctrine applies (*Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 536).

**B.      The Commission's Jurisdiction**

Petitioners first contend the Commission lacked jurisdiction to require permits or issue notices of violation and cease and desist and restoration orders because Los Angeles County, not the Commission, is the permitting authority for property in the Coastal Zone in which petitioners reside.

1.      *The Coastal Act*

In 1982, Justice Mosk recited the statutory background of the Coastal Act: "In recent decades, the People of California have become painfully aware of the deterioration

7

in the quality and availability of recreational opportunities along the California coastline due to the combined factors of an increasing demand for its use and the simultaneous decreasing supply of accessible land in the coastal zone.  Growing public consciousness of the finite quantity and fragile nature of the coastal environment led to the 1972 passage of Proposition 20, an initiative measure entitled the California Coastal Zone Conservation Act (the 1972 Coastal Act).  [Citation.]  [¶]  The 1972 Coastal Act created the California Coastal Zone Conservation Commission and directed it to oversee the orderly process of planning for the future development of the California coastline. . . .  [¶]  One of the stated purposes of the 1972 Coastal Act was to increase public access to the coast.  The 1972 Coastal Act was an interim measure, destined by its own terms to expire at the beginning of 1977.  It authorized the interim coastal commission to prepare a study summarizing the progress of planning in the coastal zone and delineating goals and recommendations for the future of California's shoreline for the guidance of the Legislature.  The study, labeled the California Coastal Plan, was completed in December 1975 and submitted to the Legislature, which used it as a guide when drafting the California Coastal Act of 1976 (the Coastal Act).  [Citation.]  The Coastal Act created the California Coastal Commission (the Commission) to succeed the California Coastal Zone Conservation Commission."  (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 162-163, fn omitted.)

Under the Coastal Act, the Commission is required to protect a coastal zone's delicately balanced ecosystem.  (§ 30001, subds. (a)-(c); § 30001.5, subd. (a); *City of San Diego v. California Coastal Com*. (1981) 119 Cal.App.3d 228, 233, 235.)  To serve this end, a coastal development permit is required for development within a coastal zone.  (§ 30600, subd. (a).)  Development includes "grading, removing, dredging, mining, or extraction of any materials . . . and the removal or harvesting of major vegetation other than for agricultural purposes . . . ."  (§ 30106.)

The Commission has initial authority to issue coastal development permits.  (§ 30600, subd. (c).)  In addition to this permitting duty, the Commission is authorized to

8

notify a landowner it intends to record a notice of violation if it finds evidence of unpermitted development. (§ 30812, subd. (a).) If the property owner objects, the owner may present evidence at a hearing before the Commission. If the Commission finds substantial evidence of a violation of the Coastal Act, it may record a notice of violation against the property. (§ 30812, subds. (b)-(d), (h).) The Commission may also issue an order directing a property owner who has undertaken or is threatening to undertake any activity requiring a permit, without securing the permit, to cease and desist (§ 30810, subd. (a)) and to restore a site to its undeveloped condition (§ 30811).

Appellants do not dispute that the Commission was initially authorized under the Coastal Act to issue notices of violation and cease and desist and restoration orders, but argue that authority passed to the County of Los Angeles long ago or should pass now.

Authority to issue coastal development permits may pass to a local government by way of either section 30500 or section 30600.5.

2.      *Section 30500:  Preparation of a Local Coastal Program Comprising a Land Use Plan and a Local Implementation Plan*

The Coastal Act "[e]ncourage[s] state and local initiatives and cooperation in preparing procedures to implement coordinated planning and development . . . in the coastal zone." (§ 30001.5, subd. (e).) Toward that end, the Coastal Act requires each local government lying within a coastal zone to "prepare a local coastal program for that portion of the coastal zone within its jurisdiction." (§ 30500, subd. (a).) (The parties and case law abbreviate "local coastal program" as "LCP.") A local coastal program comprises "a local government's (a) land use plans, (b) zoning ordinances, (c) zoning district maps, and (d) within sensitive coastal resources areas, other implementing actions, which, when taken together, meet the requirements of, and implement the provisions and policies of, this division at the local level." (§ 30108.6.) (The parties and case law abbreviate land use plan or program as LUP and local implementation plan as LIP.) "'Land use plan' means the relevant portions of a local government's general plan, or local coastal element which are sufficiently detailed to indicate the kinds, location, and

9

intensity of land uses, the applicable resource protection and development policies and, where necessary, a listing of implementing actions." (§ 30108.5.)

The Commission reviews a proposed local coastal program to determine whether it comports with the policies of the Coastal Act. (§§ 30500-30522.) After such review, the Commission may approve or disapprove the program. (*City of Chula Vista v. Superior Court* (1982) 133 Cal.App.3d 472, 488.) The Commission may approve only a portion of the program, for example the land use portion, but reject the implementation portion. (§§ 30511, subd. (b), 30513.) Once the Commission approves both the land use and implementation portions of a local coastal program, the program is certified in full, and development permitting authority passes to the local government. (§§ 30519, subd. (a), 30600, subd. (d).)

"Anyone who wants to build on his own coastal zone property must obtain a coastal development permit. (§ 30600, subd. (a).) The application for a coastal development permit must be submitted either to the Coastal Commission or to the local governmental agency (in this case, the County of Los Angeles), depending upon which entity has permitting jurisdiction—which, in turn, depends upon whether the local governmental agency has obtained the Coastal Commission's certification of a Local Coastal Program (LCP). [Fn.] If a local governmental agency has obtained certification of its LCP, the local agency becomes the permitting authority. (§ 30600, subd. (d).) If certification has not been obtained, the Coastal Commission is the permitting authority (unless the local government establishes procedures for handling permits, which the County of Los Angeles has not done). (§ 30600, subds. (b), (c), (d).)." (*Healing v. California Coastal Com.* (1994) 22 Cal.App.4th 1158, 1163.)

It is undisputed the Commission has refused to certify Los Angeles County's local coastal program for the Santa Monica Mountains area, where petitioners reside.

Beginning in 1982, the county submitted three different local coastal programs to the Commission covering three distinct areas: Santa Catalina, Marina del Rey, and the Santa Monica Mountains. (§ 30511 [a local government may seek certification of coastal

10

programs covering separate geographic units].)  The Commission eventually certified the local coastal programs for Catalina and Marina del Rey, but rejected the Santa Monica Mountains program as inadequate.  (*Healing v. California Coastal Com.*, *supra*, 22 Cal.App.4th at p. 1163.)  The county subsequently submitted a revised version, and "[o]n December 16, 1986, the Coastal Commission certified the [land use plan] segment of the [local coastal program] . . . .  But the County never submitted the required zoning ordinance and maps (§ 30108.6), and the [local coastal program] itself was therefore never certified.  As a result, permit jurisdiction was not transferred to the County and remained with the Coastal Commission."  (*Healing v. California Coastal Com.*, *supra*, 22 Cal.App.4th at p. 1163.)

In short, although the Commission certified the county's local land use plan for the Santa Monica Mountains area, it rejected the county's local implementation plan. Therefore, the Santa Monica Mountains area is as yet under no local coastal program, and the authority to regulate coastal development remains with the Commission.

Although appellants contend Los Angeles County breached its mandatory duty under section 30500 to prepare a local coastal program for the Santa Monica Mountains area, an issue we address below in Part II, they acknowledge that whatever the reason, authority to regulate coastal development never passed from the Commission to the county pursuant to section 30500.  Respecting the Commission, appellants rely instead on section 30600.5.

3.	*A Local Entity May Assume Limited Interim Permitting Authority under Section 30600.5 Prior to Certification of its Local Coastal Program under Section 30500.*

Subdivision (b) of section 30600, enacted in 1976, introduced an interim shortcut to the procedure set forth in section 30500, et seq.  It authorized a local government to "establish procedures for the filing, processing, review, modification, approval, or denial

of a coastal development permit." (§ 30600, subd. (b)(1).)[2] In 1981, the Legislature enacted section 30600.5, which governs this transfer of authority. Section 30600.5 provides in pertinent part, the following:

"(a) Prior to the certification of a local coastal program . . . the authority for issuance of coastal development permits . . . shall be delegated to local governments pursuant to the provisions of this section.

"(b) [T]he authority for issuance of coastal development permits . . . shall be delegated to the respective local governments within 120 days after . . . the effective date of certification of a land use plan . . . . [¶] . . . [¶]

"(e) The commission shall, following a public hearing and within 90 days after the effective date of this section, adopt minimum standards for public notice, hearing, and appeal procedures to govern local government review of coastal development permit applications . . . . Within 60 days prior to assumption of authority for issuance of coastal development permits pursuant to this section, the local government shall provide drafts of all procedures for issuance of coastal development permits to the executive director of the

---

[2] Section 30600 provides, in pertinent part:

"(a) [A]ny person . . . wishing to perform or undertake any development in the coastal zone . . . shall obtain a coastal development permit.

"(b) (1) Prior to certification of its local coastal program, a local government may, with respect to any development within its area of jurisdiction in the coastal zone . . . establish procedures for the filing, processing, review, modification, approval, or denial of a coastal development permit. Those procedures may be incorporated and made a part of the procedures relating to any other appropriate land use development permit issued by the local government. [¶] . . . [¶]

"(c) If prior to certification of its local coastal program, a local government does not exercise the option provided in subdivision (b), . . . a coastal development permit shall be obtained from the commission or from a local government as provided in subdivision (d).

"(d) After certification of its local coastal program or pursuant to the provisions of Section 30600.5, a coastal development permit shall be obtained from the local government as provided for in Section 30519 or Section 30600.5."

12

commission. Delegation of the authority to issue coastal development permits pursuant to subdivision (b) shall not occur until the local government has provided copies of all the adopted procedures for the issuance of coastal development permits to the executive director of the commission. . . .

"(f) Prior to the delegation of authority to issue coastal development permits as provided in subdivision (b), a local government, after appropriate notice and hearing, shall adopt an ordinance prescribing the procedures to be used in issuing such coastal development permits. . . . [¶] . . . [¶]

"(h) The time limits set forth in subdivision (b) shall be extended, by right, for not more than 90 days if a local government, by resolution of its governing body, so requests.

"(i) The provisions of this section and of any local ordinance enacted pursuant thereto shall have no further force or effect or application after that local government's local coastal program has been certified and taken effect pursuant to the provisions of this division."

The interim authority granted by sections 30600 and 30600.5 is only semi-autonomous in nature, as a local coastal development decision made under it may be appealed as a matter of right to the Commission. (§ 30600.5, subd. (d).) In contrast, an action taken by a local government under the permanent authority described by section 30500, et seq. may be appealed only if it involves a development that exists: (1) "between the sea and the first public road paralleling the sea or within 300 feet of the inland extent of any beach or of the mean high tideline of the sea where there is no beach, whichever is the greater distance"; (2) "on tidelands, submerged lands, public trust lands, within 100 feet of any wetland, estuary, or stream, or within 300 feet of the top of the seaward face of any coastal bluff"; or (3) "in a sensitive coastal resource area." (§ 30603, subd. (a).)

Section 30600.5 in full employs the word "shall" 19 times, four of which concern us today, two relating to the Commission and two to the County of Los Angeles. Subdivision (a) states "the authority for issuance of coastal development permits . . . shall

13

be delegated to local governments." This imposes a duty on the Commission to cede permitting authority to local governments. Subdivision (b) states this delegation "shall" occur within 120 days after certification of a land use plan. It is undisputed the county's land use plan for the Santa Monica Mountains area was certified in 1986.

The remaining "shalls" impose duties on local governments: Subdivisions (e) and (f) state that prior to delegation of permitting authority, the local government "shall provide drafts of all procedures for issuance of coastal development permits" to the Commission and "shall adopt an ordinance prescribing the procedures to be used in issuing such coastal development permits."

Petitioners argue this mandatory language makes transfer of permitting authority from the Commission to the county mandatory rather than discretionary. We conclude, as did Judge Chalfant, it does not.

"When we interpret the meaning of statutes, our fundamental task is to ascertain the aim and goal of the lawmakers so as to effectuate the purpose of the statute. We begin by examining the statutory language, giving the words their usual and ordinary meaning. If we find no ambiguity, we presume that the lawmakers meant what they said, and the plain meaning of the language governs. [Citation.] If, on the other hand, the statutory language is unclear or ambiguous and permits more than one reasonable interpretation, we may consider various extrinsic aids to help us ascertain the lawmakers' intent, including legislative history, public policy, settled rules of statutory construction, and an examination of the evils to be remedied and the legislative scheme encompassing the statute in question. [Citation.] In such circumstances, we must select the construction that comports most closely with the aim and goal of the Legislature to promote rather than defeat the statute's general purpose and avoid an interpretation that would lead to absurd and unintended consequences. [Citation.]" (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 928.) Although we have final responsibility for interpreting a statute, an agency's interpretation of its governing

14

statutes is entitled to great weight.  (*Gualala Festivals Committee v. California Coastal Com.* (2010) 183 Cal.App.4th 60, 66.)

Use of the word "shall" in a statute "does not necessarily create a mandatory duty; there may be 'other factors [that] indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion.' [Citations.]"  (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898-899.)  To determine whether a particular statutory provision is mandatory or directory, the court must ascertain the legislative intent.  "When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose [citation], and the courts will look to see whether the provision is of the essence of the thing to be accomplished [citation]."  (*Pulcifer v. County of Alameda* (1946) 29 Cal.2d 258, 262.)

In section 30600.5, seemingly mandatory language—use of the word "shall"—is sometimes qualified and sometimes not.  For example, subdivision (e) of section 30600.5 states the Commission "shall" adopt minimum standards governing local government review of coastal development permit applications made pursuant to that section.  This is an unqualified, unrestricted mandate (with which, petitioners acknowledge, the Commission has complied).

On the other side, subdivision (h) of section 30600.5 provides that "The time limits set forth in subdivision (b) shall be extended, by right . . . *if a local government . . . so requests.*"  (Italics added.)  No one would argue—or at least no one does today—that the Commission must extend time limits set forth in subdivision (b) whether or not a local government so requests.

As pertinent here, the Commission's purportedly mandatory duty, set forth in subdivisions (a) and (b), to delegate permitting authority to a local government within 120 days of certification of the government's land use plan, is conditioned on the local government first establishing permitting procedures, adopting ordinances prescribing them, and informing the Commission, as set forth in subdivisions (e) and (f).  But here,

15

Los Angeles County has neither apprised the Commission of any permitting procedures it intends to implement nor adopted an ordinance prescribing them. The Commission's duty to transfer permitting authority to the county therefore never arose.

Petitioners insist that pursuant to the mandatory language of subdivision (b), permitting authority transferred to the County of Los Angeles by operation of law 120 days after certification of its land use plan, despite the county having no procedures to actually issue permits. And they argue the requirement of subdivision (e) that a local government inform the Commission of its permitting procedures is "purely informational," and is trumped by the goal of prompt delegation of coastal permitting authority to local governments. Petitioners admit the county, having adopted no procedures, "of course could not actually issue any coastal development permits," but argue "members of the public seeking coastal development permits would pressure the County by litigation or other means to adopt the necessary procedures promptly."

We reject these arguments. Although prompt delegation of permitting authority to local agencies may be a desirable goal, the primary purpose of the Coastal Act is to protect California's coastal zones. (§ 30001.) This object would not be served by ceding permitting authority to a local government unprepared to issue permits.

And as the primary steward of California's coastal zones, the Commission has more than an informational interest in ensuring proper standards and procedures are in place before it cedes that stewardship to a local government. Under petitioners' reading of section 30600.5, the Commission's authority to enforce the Coastal Act in the Santa Monica Mountains area lapsed in 1986, and neither the Commission nor the county thereafter possessed authority to issue coastal development permits, and may never possess it. And a similar situation could play out in any other coastal area of the state: Wherever a local land use plan is approved but no implementation measures adopted, jurisdiction to issue development permits would lapse, perhaps forever.

This would be an absurd result. Protective statutes are not to be construed in a way that potentially removes all protections. The Legislature relies on the Commission,

16

not the impulse of members of the public seeking development permits, to protect California's coastal zones. That responsibility may pass to a local government within 120 days after its land use plan is certified, but only if the local government has apprised the Commission of its permitting procedures and adopted an ordinance setting them forth. The County of Los Angeles did neither.

4.      *Ordinance No. 89-0147*

Petitioners argue that even if permitting authority did not transfer by operation of law to the County of Los Angeles in 1986, the transfer was accomplished three years later, when the county enacted Ordinance No. 89-0147, entitled "Coastal Development Permits." The argument is without merit.

In 1989, Los Angeles County adopted Ordinance No. 89-0147, Los Angeles County Codes (LACC) Chapter 22.56, Part 17, §§ 22.56.2270-22.56.2550, "to ensure that any development, public or private, within the coastal zone *conforms to the policies and programs of the County of Los Angeles local coastal program land use plans and implementation program.*" (LACC, § 22.56.2770, italics added.) Ordinance No. 89-0147 grants the county's Department of Regional Planning authority to issue coastal development permits where "the proposed development is in *conformity with the certified*

17

*local coastal program.*" (LACC, §§ 22.56.2270, 22.56.2300, 22.56.2410, subd. (A)(1), italics added.)[3]

Ordinance No. 89-0147 has nothing to do with interim transfer of permitting authority under section 30600.5 and does not satisfy the requirements of that section.

First, as a matter of logic, if the County of Los Angeles had designed the ordinance to establish its permitting authority *in the absence of* a certified local coastal program, as section 30600.5 prescribes, it would not state the ordinance was intended to ensure compliance with the local coastal program. (LACC, § 22.56.2770.) On the contrary, an ordinance adopted pursuant to the authority set forth in section 30600.5 is to have no effect once a local government's local coastal program has been certified and taken effect. (§ 30600.5, subd. (i) ["The provisions of this section and of any local ordinance enacted pursuant thereto shall have no further force or effect or application after that local government's local coastal program has been certified and taken effect pursuant to the provisions of this division"].)

---

[3] LACC section 22.56.2410 provides:

"A. An application for a coastal development permit shall be approved where the information submitted by the applicant, discovered during the staff investigation process and/or presented at a public hearing substantiates to the satisfaction of the county the following findings:

1. That the proposed development is in conformity with the certified local coastal program; and, where applicable,

2. That any development, located between the nearest public road and the sea or shoreline of any body of water located within the coastal zone, is in conformity with the public access and public recreation policies of Chapter 3 of Division 20 or the Public Resources Code.

B. An application shall be denied where the information submitted by the applicant and/or presented at a public hearing fails to substantiate the above-mentioned findings to the satisfaction of the county.

18

Second, as a practical matter, Ordinance No. 89-0147 grants the Department of Regional Planning no permitting authority. It states the department may issue coastal development permits where "the proposed development is in conformity with the certified local coastal program." But Los Angeles County has no certified local coastal program for the Santa Monica Mountains area. Because no proposed development could possibly conform with a nonexistent coastal program, Regional Planning could issue no permits.

Ordinance No. 89-0147 sets forth coastal development permit procedures only for the Catalina and Marina Del Rey zones, which already have local coastal plans. Even if Ordinance No. 89-0147 was intended to apply also to the Santa Monica Mountains area and to satisfy subdivision (f) of section 30600.5, nothing in the record suggests the County of Los Angeles ever satisfied subdivision (e) of that section, which requires that it inform the Commission of its interim permitting procedures.

5.    *Conclusion*

In sum, for coastal development permitting authority to pass from the Commission to the County of Los Angeles the county must either (1) obtain certification of a local coastal program pursuant to section 30500 or (2) obtain certification of a land use program and institute interim procedures for issuing permits pursuant to section 30600.5. The County of Los Angeles has completed neither of these steps. Permitting authority thus remained with the Commission, which therefore had jurisdiction to record the notice of violation and cease and desist and restoration orders at issue here.

**B.    Due Process**

Petitioners argue they did not receive a fair hearing before the Commission, in four respects. First, they argue the hearing was unfair because the Commission predetermined the outcome, as evidenced by one of the commissioners referring to petitioners on three occasions as violators rather than alleged violators.

If a record of administrative proceedings "shows bias and prejudice upon the part of the administrative body, its decision will not be upheld by the courts." (*Perlman v.*

19

*Shasta Joint Jr. College Dist. Bd. of Trustees* (1970) 9 Cal.App.3d 873, 883.) Here, at the beginning of the administrative hearing one of the 11 commissioners referred to petitioners as "alleged violators," but later in the proceedings referred to them three times as "violators." We think such references result more from absentmindedness than bias. At any rate, the comments of one commissioner are not evidence the Commission as a body, which voted unanimously to issue the orders it did, was biased.

Petitioners next argue the Commission was biased against them because it acted as both prosecutor and judge, in that a commission staff member prosecuted the case, which was adjudicated by the Commission itself. We reject the argument, as this common practice comports with due process. (*Dept. of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 16-17; *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1581 ["The mere fact that the decision maker or its staff is a more active participant in the factfinding process . . . will not render an administrative procedure unconstitutional"].)

Petitioners argue the Commission was prejudiced against them because it uses fines and penalties it collects to fund itself. Petitioners cite to no evidence in the administrative record indicating this is true, and at any rate the Commission here did not impose any fine or penalty on petitioners. We also note, as did Judge Chalfant below, that funds derived from Commission activities under the Coastal Act are deposited in the Violation Remediation Account of the Coastal Conservancy Fund until appropriated by the Legislature. (§ 30823.) There is no evidence the Commission may control or appropriate incoming funds.

Finally, petitioners argue the Commission's bias is evidenced by the fact that it has "never ruled against itself" in an enforcement action. The record is devoid of any evidence supporting the argument, which at any rate would not establish bias.

C.     **Substantial Evidence**

Petitioners contend the Commission's findings and orders were unsupported by substantial evidence, as the construction on their property did not constitute

20

"development" for purposes of the Coastal Act because it was exempt under an agricultural exception to the Coastal Act's permit requirements (§ 30106: "development" means "the removal or harvesting of major vegetation other than for agricultural purposes"), and the outbuildings were necessary to that exempt development. The trial court rejected the arguments because petitioners failed to make them at the administrative hearing. We similarly conclude petitioners waived the contentions by failing to raise them at the hearing.

Where an administrative remedy is provided by statute, this remedy must be exhausted before the courts will act. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292; *Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 619 [failure to exhaust administrative remedies prevents a party from seeking relief through administrative mandamus].) This "'is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis*, and binding upon all courts.' [Citations.]" (*Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 874.) The rationale for the rule is that an agency is entitled to learn the contentions of interested parties before litigation arises, so it will have an opportunity to address the contentions and perhaps render litigation unnecessary. (*Mani Brothers Real Estate Group v. City of Los Angeles* (2007) 153 Cal.App.4th 1385, 1394.) To advance this purpose an interested party must present the exact issue to the administrative agency that is later asserted during litigation or on appeal. (*Ibid*.) General objections, generalized references or unelaborated comments will not suffice. (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 910.) "'[T]he objections must be sufficiently specific so that the agency has the opportunity to evaluate and respond to them.' [Citation.]" (*Id*. at p. 909.)

"The petitioner bears the burden of demonstrating that the issues raised in the judicial proceeding were first raised at the administrative level. [Citation.]" (*Porterville*

*Citizens for Responsible Hillside Development v. City of Porterville*, *supra*, 157 Cal.App.4th at p. 909.)

As noted, petitioners made no substantive showing at the hearing, objecting primarily on due process and jurisdictional grounds. Petitioners argued, without explanation, that the coastal development permit issued to Rollins in 1987 authorized their landscaping 20 years later and installation of vineyards was permissible under unspecified Los Angeles County zoning regulations, but presented no evidence supporting any of their contentions, instead indicating they stood upon prior communications with Commission staff. Had petitioners made before the Commission the arguments they attempt to make here concerning prior agricultural use, the Commission, which has primary authority and expertise to pass on such matters, would have addressed them. We are in no position to examine the historical use of petitioners' property to determine whether their vineyards qualify for any particular agricultural exemption as a matter of law.

## D.    Declaratory and Injunctive Relief

Petitioners sought declaratory, injunctive and mandamus relief below compelling the Commission to "adopt procedures that will bring about the certification of the County's local coastal program." They argued the Coastal Act obligates the Commission to "adopt regulations that would ensure the adoption and certification of local coastal programs," but "[d]espite the passage of more than 35 years since the adoption of the Coastal Act, the County of Los Angeles has not submitted a local coastal program for certification." On appeal, petitioners argue the Commission has "breached its duty to adopt regulations to prevent the County from shirking its obligations" under the Coastal Act, and must be ordered to "adopt sufficient procedures for the certification of the County's local coastal program." We conclude the Commission owes no such duty.

Section 30500 states a local government lying within a coastal zone "shall prepare a local coastal program" for that zone. (§ 30500, subd. (a).) "The precise content of each local coastal program shall be determined by the local government, consistent with

22

Section 30501, in full consultation with the commission and with full public participation." (§ 30500, subd. (c).) Section 30501 obligates the Commission to "adopt . . . procedures for the preparation, submission, approval, appeal, certification, and amendment of any local coastal program." (§ 30501.)

Petitioners do not contend the Commission failed to adopt regulations pursuant to section 30501 (Cf. Cal. Code Regs., tit. 14, § 13500 et seq.), nor that Los Angeles County failed to prepare a local implementation plan that, if certified by the Commission, would complete the local coastal program and result in transfer of permitting authority. Petitioners argue the Commission failed to adopt regulations that would "result" in a local coastal program suitable for certification. Petitioners find this purported duty in the language of section 30501 itself, which obliges the Commission to "adopt . . . procedures for the . . . certification . . . of any local coastal program."

The argument is meritless. A statutory mandate compelling a regulatory agency to adopt procedures that another must follow to achieve a certain goal does not obligate the agency to ensure the goal is actually achieved. The duty to obtain a successful result rests only where the Legislature prescribes. Here, subdivision (a) of section 30500 obligates a local government to prepare a local coastal program. Subdivision (c) of that section specifies the local government shall determine the program's content. Together these sections place responsibility for a local coastal program's success on the local government, not the Commission. Section 30501 obligates the Commission only to establish procedures for evaluation and implementation of that program. It does not shift responsibility to the Commission for a successful program.

Petitioners' requests for declaratory, injunctive and mandamus relief against the Commission were therefore properly denied.

## II.     COUNTY OF LOS ANGELES

Petitioners contend the trial court erred when it found the County of Los Angeles cannot be compelled to adopt a local coastal program under section 30600.5.

Section 30804 gives "any person" standing to maintain an action to enforce duties specifically imposed upon the Commission or a local governmental agency by the Coastal Act.[4] Where a petition challenges an agency's failure to perform an act required by law rather than the result of an administrative hearing, the remedy is by ordinary or traditional mandate pursuant to Code of Civil Procedure section 1085. (*Conlan v. Bonta* (2002) 102 Cal.App.4th 745, 752.) Such a writ is available where the petitioner has no plain, speedy and adequate alternative remedy; the respondent has a clear, present and usually ministerial duty to perform; and the petitioner has a clear, present and beneficial—or in this case statutory—right to performance. (*Payne v. Superior Court of Los Angeles County* (1976) 17 Cal.3d 908, 925.)

As stated above, section 30500 of the Coastal Act requires each local government lying within a coastal zone to "prepare a local coastal program for that portion of the coastal zone within its jurisdiction." (§ 30500, subd. (a).) It is undisputed Los Angeles County prepared a local coastal program in 1982, and although the land use portion of the program was certified in 1986, no implementation portion has ever been certified. (*Healing v. California Coastal Com.*, *supra*, 22 Cal.App.4th at p. 1163.) But work continues. As the trial court found, the County of Los Angeles "is involved in the complex process of negotiating with the Coastal Commission over the content of a LCP." Petitioners adduce nothing in the record refuting this finding other than the long lapse of time between 1986 and now, and cite no authority—and we have discovered none— setting a time limit for negotiations over a local implementation plan. On the contrary, approval of a local implementation plan is a matter of Commission discretion. Petitioners therefore do not purport to establish and have not established the county failed to perform an act required by section 30500.

---

[4] Section 30804 provides: "Any person may maintain an action to enforce the duties specifically imposed upon the commission, any governmental agency, any special district, or any local government by this division. No bond shall be required for an action under this section."

24

Petitioners contend Los Angeles County must be compelled to *complete* the local implementation plan process, i.e., by submitting zoning ordinances and other implementation actions that the Commission will accept, pursuant to the mandatory language of subdivisions (e) and (f) of section 30600.5.  They are incorrect.

As discussed, subdivision (b) of section 30600.5 authorizes the Commission to delegate interim permitting authority to a local government within 120 days after it certifies the local government's land use plan.  Subdivision (e) of that section obligates the local government to inform the Commission of its procedures for issuing coastal development permits "[w]ithin 60 days prior to assumption of authority . . . *pursuant to this section.*"  (Italics added.)  Subdivision (f) states the local government must adopt an ordinance prescribing the procedures "[p]rior to the delegation of authority . . . *as provided in subdivision (b).*"  (Italics added.)

As seen from the italicized language above, the initial mandatory language of subdivisions (e) and (f) of section 30600.5 places duties on a local government—to establish permitting procedures, copy them to the Commission, and adopt implementing ordinances—only when the local government seeks interim coastal permitting authority pursuant to section 30600.5.  But no authority petitioners identify or we have discovered, including section 30600.5 itself, obligates a local government to seek interim permitting authority in the first instance.  "It is not enough . . . that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion."  (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498.)  The choice whether to seek interim permitting authority is discretionary.

Petitioners themselves offer a helpful parallel.  They argue the county's compliance with section 30600.5 "is no more optional than is [petitioners'] compliance with the preceding Section 30600(a) which says that any person wishing to perform development in the coastal zone 'shall obtain a coastal development permit.'"  We agree.  A person wishing to perform coastal development must obtain a coastal development permit.  Conversely, a person not wishing to undertake coastal development need not

25

obtain a permit. Similarly under section 30600.5, a local government wishing to obtain interim permitting authority must establish it has permitting procedures in place. But a local government not seeking interim authority need not do so. Although a local government must assume permanent permitting authority pursuant to section 30500, the choice whether or not to also seek interim permitting authority remains a matter of discretion.

Petitioners argue our reading of section 30600.5 as making assumption of interim permitting authority optional renders superfluous subdivision (b) of section 30600, which prescribes another option for assuming interim authority. Not so.

Sections 30600 and 30600.5 together set forth only one procedure for obtaining interim permitting authority. Section 30600 itself prescribes no procedure at all, optional or otherwise, but merely discusses in broad strokes the topic of coastal development permits and who may issue them, either on a permanent or interim basis. For example, subdivision (a) of that section states a person wishing to undertake development in a coastal zone must obtain a permit to do so. Subdivision (c) states the permit must be obtained from the Commission unless a local government has exercised the option provided in subdivision (b). The pertinent portion of subdivision (b)(1) of section 30600 provides: "Prior to certification of its local coastal program, a local government may, with respect to any development within its area of jurisdiction in the coastal zone and consistent with the provisions of Sections 30604, 30620, and 30620.5, establish procedures for the filing, processing, review, modification, approval, or denial of a coastal development permit."

In 1981, the Legislature enacted section 30600.5 (Stats. 1981, ch. 1173, § 19), which elaborated on the nature of interim permitting authority and specified the procedure for assuming it. Thus, although section 30600 describes no time limits regarding interim permitting authority, they are set forth in section 30600.5. (§ 30600.5, subds. (b), (e) & (h).) Nothing is said in section 30600 about minimum standards for public notice, hearing and appeal procedures, but see section 30600.5. (*Id.* at subds. (e)

26

& (f).) And although section 30600 states nothing about which coastal permit rulings are appealable, section 30600.5 does. (*Id*. at subd. (d).) The specific, detailed treatment of voluntary assumption of interim permitting authority found in section 30600.5 does not make superfluous the introduction to the topic found in section 30600.

As further evidence that sections 30600 and 30600.5 describe only one method by which interim permitting authority may be obtained, in 1981 the Legislature amended subdivision (d) of section 30600 (Stats. 1981, ch. 1173, § 19) to provide that interim authority may be obtained exclusively "as provided for in . . . Section 30600.5." The Legislature simultaneously echoed this prescription in subdivision (a) of section 30600.5 itself, which provides that "Prior to the certification of a local coastal program . . . , the authority for issuance of coastal development permits provided for in . . . Section 30600[] shall be delegated to local governments pursuant to the provisions of this section."

Section 30500 sets forth a nondiscretionary method by which a local government may assume coastal development permitting authority. The trial court found the County of Los Angeles was actively pursuing this method. Sections 30600 and 30600.5 provide a voluntary option for obtaining interim authority. Mandamus will not lie to compel the county to pursue this option. (See *Common Cause v. Bd. of Supervisors* (1989) 49 Cal.3d 432, 445 [public entity may not be compelled to exercise discretion in a particular manner].)

Petitioners' requests for mandamus, injunctive and declaratory relief against the County of Los Angeles were therefore properly denied.

<strong>DISPOSITION</strong>

The judgment is affirmed. Respondents are to recover their costs on appeal.

CERTIFIED FOR PUBLICATION.


                                        CHANEY, J.

We concur:

        MALLANO, P. J.                              ROTHSCHILD, J.

27