Filed 7/29/24 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAN PABLO AVENUE GOLDEN GATE IMPROVEMENT ASSOCIATION, INC., et al., <br><br>    Petitioners and Appellants, <br><br> v. <br><br> CITY COUNCIL OF THE CITY OF OAKLAND et al., <br><br>    Defendants and Respondents. | A168039 <br><br><br> (Alameda County <br> Super. Ct. No. 22CV005451) |

THE COURT:

It is ordered that the opinion filed herein on June 28, 2024, be modified as follows:

1.    On page 8, footnote 5, the number "60" has been changed to "90," the reference to Government Code section 65009 has been clarified by adding "subdivision (c)(1)," and the number in "60-day" has been changed to "90-day" so the sentence reads:

> Although that window remains open for 90 days under Government Code section 65009, subdivision (c)(1), the 90-day time frame seems meaningless in circumstances where there is no notice of the granting of the clearance.

The modification does not change the judgment.

Appellant's petition for rehearing is denied.


Dated:  July 29, 2024                                    BROWN, P. J.

Filed 6/28/24 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAN PABLO AVENUE GOLDEN GATE IMPROVEMENT ASSOCIATION, INC., et al.,<br><br>    Petitioners and Appellants,<br><br>v.<br><br>CITY COUNCIL OF THE CITY OF OAKLAND et al.,<br><br>    Defendants and Respondents. | A168039<br><br><br>(Alameda County<br>Super. Ct. No. 22CV005451) |

Petitioners San Pablo Avenue Golden Gate Improvement Association, Inc., and Oakland Neighborhoods For Equity (Neighbors) appeal from the trial court's denial of a writ of mandamus following the dismissal of their administrative complaint against the City Council of the City of Oakland, William Gilchrist, Robert D. Merkamp, and Nathaniel L. Dunn (the City) brought pursuant to Oakland Municipal Code (OMC) chapter 17.152.[1]  We affirm.

**BACKGROUND**

**I. CloudKitchens's Use Classified as Light Manufacturing**

In September 2020, CloudKitchens applied to the City's Planning Department for a zoning clearance to convert a wood shop into a commercial kitchen.  CloudKitchens's submission described the proposed facility as

---

[1] Undesignated references are to the Oakland Municipal Code (OMC).

1

"[c]ompartmentalized commercial kitchens for take-out services only," measuring roughly 14,000 square feet space.

As explained on the City-issued application form, "[a] Zoning Clearance is required for all new or relocated businesses (including change of ownership) in order to verify that the type of business [being proposed] is permitted by the City's Zoning Regulations at that location." CloudKitchens's facility is in a "Housing and Business Mix-1 Commercial Zone" (HBX-1 zone), which permits by right certain industrial activities classified as "Light Manufacturing." (§ 17.65.030.) One such light manufacturing use enumerated in the OMC is "the production or assembly of: [¶] . . . [¶] (D) [b]everages (including alcoholic) and food . . . with more than ten thousand (10,000) square feet of floor area." (§ 17.10.560, subd. (D).)

Later that month, the Planning Department issued CloudKitchens a zoning clearance. The following March, the Planning Department issued CloudKitchens a building permit allowing renovations.

**II. Neighbors Request Revocation Review Process**

In April 2021, Neighbors learned of CloudKitchens's plans. Nearly two months later, Neighbors sent a letter to the City Administrator "request[ing] that the City reconsider its approval of CloudKitchens as qualifying for HBX-1 classification." The City's Zoning Manager responded, maintaining that the decision was proper.

In July, Neighbors filed a formal complaint requesting the Planning Department initiate a revocation review process pursuant to chapter 17.152. They alleged "CloudKitchens will [b]ecome a [n]uisance" due to increased traffic, air pollution, and noise, and that the commercialized kitchen "is essentially a Fast-Food Restaurant" not permitted in an HBX-1 zone. Given

the alleged impermissible use and anticipated nuisance, Neighbors contended that the zoning clearance contravened zoning regulations.

The Planning Department denied the request. Echoing the Zoning Manager's earlier response, it reiterated that CloudKitchens's proposed use was "considered a Light Manufacturing Industrial Activity since it involves the manufacturing of food in a facility that exceeds 10,000 square feet," and thus was "permitted by right in the HBX-1 Zone." It expounded that this determination was consistent with "similar kitchen uses . . . including another CloudKitchen[s] located in the City."

The Planning Department further stated it was "beyond the scope of O.M.C. [c]hapter 17.152 to revisit [the] zoning determination" because it enforces against violative uses and existing nuisances not zoning decisions. It accordingly refused to reconsider its zoning determination, but it did address the merits of Neighbors' complaint that CloudKitchens's activities constituted a nuisance. Despite sending staff "a number of times" to the site to observe any violations, the Planning Department averred there was not substantial evidence to initiate revocation proceedings.[2]

Neighbors appealed to an independent hearing officer pursuant to section 17.152.080. They expressly limited the appeal to two issues: (1) whether chapter 17.152 "provide[s] a legal basis to revoke the prior City approvals"; and (2) whether CloudKitchens's proposed use was "correctly classified as Light Manufacturing Industrial."

_____

[2] Staff did observe one right-of-way violation by a double-parked truck. As the Planning Department explained, however, "[p]ublic right-of-way violations are outside the purview of zoning regulations" and are "generally addressed through the City's Code Enforcement process, not through O.M.C. Section 17.152." It therefore stated it was "conferring with the City's Department of Transportation . . . on how to appropriately address the issue with CloudKitchen[s]."

The hearing officer affirmed the decision.  He first noted chapter 17.152 is designed to address "public complaints regarding existing violations" not "[p]revious errors by City staff in making zoning determinations."  He therefore found the Planning Department could not revisit the initial zoning approval and was correct to deny the revocation request "to the extent the City addressed only the present allegations regarding CloudKitchens'[s] existing/intended use."  Nonetheless, the hearing officer found sufficient evidence supported the light manufacturing use classification.  Despite conceding that CloudKitchens's business model shared "some characteristics of a fast-food restaurant," he concluded the Planning Department's classification was "persuasive" and found "the City should be afforded deference in interpreting its own zoning classifications."

Neighbors then petitioned for a writ of mandate in the trial court.  Following a hearing, the trial court affirmed, holding that chapter 17.152 "does not create a legal basis to challenge a prior zoning determination made by the City."  Because Neighbors limited their administrative appeal to the Planning Department's use classification and zoning clearance, the trial court held that the hearing officer lacked jurisdiction to reach the complaint's merits and that remand would be futile.  Neighbors appealed.

## DISCUSSION

Neighbors contend the hearing officer erred as a matter of law by inverting the burden of proof under chapter 17.152.  Specifically, they assert the OMC requires the hearing officer to grant an appeal and set a revocation hearing where a petitioner presents sufficient evidence of a zoning violation — as opposed to upholding a decision supported by substantial evidence, as the hearing officer did here.  They further claim that the hearing officer erred by deferring to the Planning Department's interpretation of the

4

use classifications and that the evidence contradicted the department's determination.

We need not address these assertions, however, because chapter 17.152 does not provide a legal basis to challenge the Planning Department's interpretations and determinations of the zoning regulations, including use classifications and zoning clearances.

## I. Standard of Review

We review the denial of a petition for writ of administrative mandamus de novo to determine whether the hearing officer "prejudicially abused its discretion." (Code Civ. Proc., § 1094.5, subd. (b); see *California Renters Legal Advocacy & Education Fund v. City of San Mateo* (2021) 68 Cal.App.5th 820, 836–837.) We independently review the proper interpretation of statutes, but where appropriate we consider a municipality's interpretation of its own ordinances. (*California Renters Legal Advocacy & Education Fund v. City of San Mateo*, *supra*, 68 Cal.App.5th at p. 837; *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 8.)

## II. Chapter 17.152 Is an Invalid Basis to Challenge Zoning Decisions

Neighbors argue that chapter 17.152 — known as the Enforcement Regulations (§ 17.152.010) — authorizes review of use classifications and resultant zoning clearances. We disagree.

Section 17.10.090 specifies chapter 17.132 as the appropriate chapter for appealing use classification determinations. Entitled "[c]lassification of unlisted uses," it directs the Planning Department to classify an activity with the description that "most closely portrays it." (§ 17.10.090.) It expounds that if there is "uncertainty as to the classification of use, the Director of City Planning shall classify said use, subject to the right of appeal from such determination *pursuant to the administrative appeal procedure in*

5

*[c]hapter 17.132.*" (*Ibid.*, italics added.) There is no ambiguity over whether chapter 17.152 is an improper legal basis to challenge a use classification.

Even if section 17.10.090 did not specify that chapter 17.132 governs appeals of uncertain or novel use classifications, the plain meaning of chapter 17.132 establishes that it covers Neighbors' complaint. The express purpose of chapter 17.132 is to "prescribe the procedure" for appealing "*any* determination or interpretation made by the Director of City Planning under the zoning regulations." (§ 17.132.010, italics added.) This broad language facially applies to use classifications and zoning clearances. (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 635 [the term "any" is one of "broad inclusion, meaning 'without limit and no matter what kind' "].) The applicability of chapter 17.132 is fatal to Neighbors' claim because they filed it after the statute of limitations. (§ 17.132.020 [requiring an appeal to be brought within ten calendar days of a Planning Department decision].)[3]

Neighbors fail to substantiate their contention that the Planning Department did not adhere to classification rules outlined in chapter 17.10. In any event, Neighbors forfeited any argument that the Planning Director was required to issue a "formal" use classification determination by failing to raise this argument during the administrative process. (*Hagopian v. State of Cal.* (2014) 223 Cal.App.4th 349, 371 ["an interested party must present the exact issue to the administrative agency that is later asserted during

---

[3] Given our independent interpretation that chapter 17.132 controls, we need not consider whether deference is owed to the Planning Department's interpretation under the principles articulated in *Yamaha Corp. of America v. State Bd. of Equalization*, *supra*, 19 Cal.4th at page 8. For the same reason, we deny Neighbors' request to take judicial notice of exhibits A–F documenting the Planning Department's past zoning approvals. Conversely, we grant Neighbors' request to take judicial notice of Exhibits G–J because they capture provisions of the OMC that we interpret de novo.

litigation or on appeal. [Citation.] General objections, generalized references[,] or unelaborated comments will not suffice"].) Neighbors do not cite any ordinance or case law supporting their contention that a zoning clearance issued by Planning Department staff does not constitute a determination under chapter 17.10. (*Temple of 1001 Buddhas v. City of Fremont* (2024) 100 Cal.App.5th 456, 204 [arguments unsupported by legal authority or cogent analysis are forfeited].) Nor are we persuaded that a zoning clearance does not constitute a "determination" by the Planning Department merely because it is also required for certain business permits under chapter 5 of the OMC.[4] (See §§ 5.02.130, 5.12.050, subd. (A).) Indeed, the application form expressly states that a zoning clearance is required "to verify that the type of business [being proposed] is permitted by the City's Zoning Regulations at that location."

To avoid being time-barred by chapter 17.132,[5] Neighbors contend that the Enforcement Regulations control because they empower any

---

[4] We observe this argument contradicts Neighbors' Request for Judicial Notice, which asserts "[t]he issuance of staff reports, zoning clearances[,] and approval letters are formal actions." It is also belied by Neighbors' initial letter to the Planning Department "request[ing] that the City reconsider its approval of CloudKitchens as qualifying for HBX-1 classification" as well as their admission that a clearance letter is "the Zoning Department's interpretation, based on representations by the owner, that the activity is allowed."

[5] Section 17.132.020 requires an appeal "by any interested party" from "any administrative determination or interpretation made by the Director of City Planning under the zoning regulations" be taken to the City Planning Commission "within ten (10) calendar days." It is unclear on this record whether anyone other than Cloudkitchens and the Planning Department knew of Cloudkitchens's zoning clearance at the time it issued, or whether, as a matter of Planning Department practice, the decision on Cloudkitchens's "over the counter" zoning clearance application was

7

member of the public to file a complaint regarding "violations of the zoning regulations." (§ 17.152.080.) Neighbors broadly interpret this phrase to suggest that the Enforcement Regulations purports to "ensure compliance with the zoning regulations" (§ 17.152.010), which encompass section 17.65.030 concerning permitted uses in HBX-1 zones. (See § 17.07.020 [defining the zoning regulations as "[t]he provisions of [c]hapters 17.07 through 17.158"].) But this ignores the dictate that the Enforcement Regulations "shall not be deemed exclusive" in ensuring compliance with the zoning regulations. (§ 17.152.010.) Moreover, where a specific statute covers a particular subject, " 'the specific statute controls and takes priority over a general statute encompassing the same subject.' " (*Ross v. California Coastal Com.* (2011) 199 Cal.App.4th 900, 928.) Thus, even if "violations of zoning regulations" under the Enforcement Regulations include erroneous zoning interpretations and determinations by the Planning Department, chapter 17.132 as the more specific ordinance controls.[6]

---

sufficiently known to the public that notice of it might be said to be chargeable to "any interested party." (§ 17.132.020.) Arguably, assuming the Planning Department's administrative decisions on zoning clearance applications such as this one are not published or otherwise widely known to the public, the brief, 10-day window to appeal effectively forecloses facial challenges to zoning determinations by third parties. Although that window remains open for 60 days under Government Code section 65009, the 60-day time frame seems meaningless in circumstances where there is no notice of the granting of the clearance. Since any number of policy considerations concerning the appropriate timing of pre-enforcement challenges to zoning determinations of all kinds may be in play here, it seems equally clear to us that this issue is best addressed legislatively (i.e. by rule, ordinance, or statute) and is beyond our purview in this appeal.

[6] Moreover, "violations" as used in section 17.152.080 is, at most, ambiguous, so we consider other aids of interpretation to discern its meaning.

Neighbors' authority for the proposition that staff approvals are inconsistent with the applicable zoning scheme are *ultra vires* are unavailing. (See *City and County of San Francisco v. Board of Permit Appeals* (1989) 207 Cal.App.3d 1099, 1106–1110 [appeals board cannot issue permit where density violation was not in dispute and evidence negated prior nonconforming use]; *Johnston v. Board of Supervisors* (1947) 31 Cal.2d 66, 73–74 [Board of Supervisors is bound by terms of ordinance when issuing a use permit], disapproved on other grounds by *Bailey v. Los Angeles County* (1956) 46 Cal.2d 132, 139.) Neighbors did not bring an appeal under the correct chapter of the OMC; and no zoning violation has been found.

Neighbors' contention that this outcome upends their rights and expectations ignores the City's admission that chapter 17.152 may be used to abate activities that contravene the HBX-1 zone's permitted uses or cause a

---

(*H.B. v. Superior Court* (2023) 97 Cal.App.5th 341, 344.) We begin by considering the term in the context of associated words. (See *290 Division (EAT), LLC v. City and County of San Francisco* (2022) 86 Cal.App.5th 439, 456 [discussing the interpretative canon *noscitur a sociis*].) A revocation complaint must be based on substantial evidence of "[1] a violation of the [z]oning regulations, [2] [a violation of] any prescribed condition of approval[,] or [3] public nuisance [that] exists on . . . any property that is the subject of a zoning permit." (§ 17.152.080.) The latter two clauses only proscribe certain behavior by property owners. This lends credence to the City's argument that the first clause — violations of zoning regulations — likewise only extends to actions of property owners.

We further "examine that language in the context of the entire statutory framework to discern its scope and purpose." (*Kaanaana v. Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 168–169.) The Enforcement Regulations empower officials to "arrest violators" of the zoning regulations and grant officials right of entry to inspect suspected violations. (§§ 17.152.040–17.152.050.) Such investigatory and enforcement powers make sense to address acts by property owners who violate zoning rules or create a nuisance, but they are incongruous with correcting the Planning Department's determinations of use classifications.

nuisance. In other words, the Planning Department's use classification and zoning clearance was *not* a variance or rezoning, and the Enforcement Regulations still permit Neighbors to seek a revocation hearing for any nonconforming uses (or nuisances) if they arise. What the Enforcement Regulations do not do is allow members of the public to challenge use classifications or zoning determinations outside the procedures prescribed in chapter 17.132.

Because we find that chapter 17.152 does not provide a legal basis for challenging the Planning Department's classification determination, we need not address Neighbors' other arguments regarding the merits of the use classification or nuisance per se.

## DISPOSITION

The order denying the petition for writ of mandate is affirmed. The City is entitled to recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

HITE, J.*

We concur:

BROWN, P. J.
STREETER, J.

*San Pablo Avenue Golden Gate Improvement Association, Inc., et al. v. City Council of the City of Oakland et al.* (A168039)

---

*Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10

Trial Judge:       Hon. Frank Roesch

Trial Court:       Alameda County Superior Court

Attorneys:         Greenfire Law, PC, Rachel S. Doughty, Ariel Strauss, for
                   Petitioners and Appellants.

                   Barbara J. Parker, City Attorney, Maria Bee, Chief
                   Assistant City Attorney, Montana Baker and Allison L.
                   Ehlert, Deputy City Attorneys, for Defendants and
                   Respondents.

                   Hanson Bridgett LLP, Andrew A. Bassak, Niran S.
                   Somasundaram, for Defendants and Respondents.

11